## CHOURNOS v. EVONA INV. CO. et al.

No. 6092.   Decided October 17, 1939.   (94 P. 2d 470.)

For prior opinion, see 97 Utah 335, 93 P. 2d 450.

*Thatcher & Young,* of Ogden, for appellant.

*Cheney, Jensen, Marr & Wilkins,* of Salt Lake City, and *Arthur Woolley* and *DeVine, Howell & Stine,* all of Ogden, for respondents.

PRATT, Justice.

In this petition for rehearing, counsel for appellant contend that the majority opinion overlooked the equities of the case.

No doubt counsel will concede that if Chournos suffered loss as the result of his own selection, it makes little difference how reprehensible we may believe the conduct of the Kellers to have been.

As we view the case, there are three likely ways by which Keller might have taken advantage of Chournos. They are these: (1) Initiating the offer by Lloyd Keller to purchase from the Evona Investment Company at a time embarrassing to Chournos, whether for financial reasons or otherwise; (2) taking steps to prevent Chournos from tendering the $6,100 within the time limit and the terms of the option; and (3) purchasing a title paramount to the lease, thereby terminating that lease to the injury of Chournos. Let us consider each in turn.

(1) There is not a scintilla of evidence in the case—nor do the pleadings set up any such issue—indicative of the fact that Chournos was not in a position to purchase the property within the time between Lloyd Keller's offer and the expiration of the option, nor does it appear that he did not want to purchase at that time. In fact, one is led to believe that had the tender of Chournos been accepted, he would have been perfectly satisfied. He lays no claim otherwise.

(2) Little need be said of this point, other than what was said in our original opinion. Nothing was placed in the way

of Chournos to interfere with the acceptance of that option. He and his counsel were present within time, free and unfettered in their actions. But, instead of complying with the terms of the option, which would have made it binding, they made a counter-offer on behalf of Chournos only. This is evidenced by the following testimony of Chournos which we extract from the transcript:

"Q. You first offered to buy the whole land for sixty one hundred dollars, and then when Mr. Cook refused that offer, then you offered to buy one half, or an undivided one half interest? A. Yes, sir.

"Q. For one half of the purchase price, is that right? A. Yes, sir. One half of each, undivided one half interest.

"Q. *You intended to buy for yourself?* A. Yes, sir." (Tr. page 35. Italics added.)

(3) Upon this point there has been a disagreement among the members of this court. The majority, however, take the view that the lease, by its terms, did not terminate with the purchase. The provision in the lease is as follows:

"* * * but in event of such sale being made *to any persons not a party to this lease*, the lessees shall be given one year within which to vacate said premises, after which, the lessees having paid all rentals due hereunder, including that for the twelve months period last mentioned, the said lessees shall then surrender and deliver up possession of said premises and cancel this lease." (Italics added.)

It is quite evident that there was no purpose in making such a statement unless the thought were that, except for a purchase by a stranger to the lease, each should continue the grazing of his sheep upon the land at least for the period of the lease. After that period it would be a matter of further agreement. The idea is not far fetched to believe that at the time of entering into the lease, the possibility of a purchase by one instead of both lessees came into their minds.

With this addenda to our decision, we hope we have clarified our stand in the matter. We do not uphold Mr. Keller's methods of doing business from the standpoint of business

ethics, or treatment of his associates, but we are unable to find where he has stepped outside the bounds of legal requirements to the disadvantage of his associate. Chournos possessed, under the lease, certain rights to graze his sheep upon the land, and also certain rights to become a joint purchaser of the property in question. Keller's purchase of the land did not, by the terms of the lease, terminate the former. Chournos voluntarily gave up the latter. Chournos makes no other complaint. There is nothing in this case which justifies the application of the rule that he who acquires land or other property by fraud, misrepresentation, imposition, or concealment, or under other such circumstances as to render it inequitable for him to retain the property, is in equity to be regarded as trustee ex maleficio thereof for a person who suffers by reason of the fraud or other wrong, and who is equitably entitled to the property.

Petition for rehearing denied.

MOFFAT, C. J., and LARSON, J., concur.

WOLFE, Justice (dissenting).

I dissent from the order denying a rehearing. In this case it is apparent that L. L. Keller did more than "advise" his son to buy the property although I think any partner who "advised" or advocated that an outsider buy a piece of property where he knew that such buying would be detrimental to the community interest, might be considered disloyal to that interest. But in this case L. L. Keller went further. While, *jointly interested with Chournos,* he actively used his son to start in motion a process which was designed to oust Chournos of the latter's interest for his own or his son's benefit and evidently, in the end, succeeded. I think all the by-play between Chournos and the Evona Investment Company is beside the point in view of this over-arching and compelling fact, the importance of which I cannot convince the majority. I think only legalistic rationalism prevents equitable interposition from arriving at the correct result

of putting the parties where they should have been if L. L. Keller had not initiated his plan to circumvent Chournos.

McDONOUGH, Justice (dissenting).

With reference to the third point discussed on petition for rehearing, it is the opinion of the writer, as indicated in a dissenting opinion written at the time the case was decided, that the provision of the lease, quoted in the opinion denying rehearing, effected a termination of the lease upon the expiration of one year following the purchase. Certainly Lloyd Keller was a person not a party to the lease, and if the purchase is to be regarded as being made by L. L. Keller, he was not, under the reasoning of the opinion of the court, purchasing as a party to the lease but as though he were a stranger thereto. The lease made no provision for termination or continuance of the rights under the lease, should the lessees purchase, for the obvious reason that if they became owners of the tract their lease would—there being no reason for holding the lease and title independently —merge in the fee title. The lessees did not purchase; the purchase was not made pursuant to the provision of the lease relative to a purchase by a party. However, since the opinion on petition for rehearing construes the provision in question as saving to the joint tenants their right to occupancy during the remainder of the term granted by the lease, then assuming that question to be before us for determination in this case, such construction results in the purchase being made subject to the lease. Thus construed, such purchase was not adverse to the lessees' rights of occupancy. With these observations, I adhere to the views heretofore expressed in my dissenting opinion.