[No. 38721. Department Two. November 16, 1967.]

J. E. WORK, INC., *Respondent*, v. ROBERT H. LOVELL *et al.,*
*Appellants,* FIDELITY & DEPOSIT COMPANY OF MARYLAND,
*Respondent.*\*

*Thomas G. Holcomb* (of *Holcomb, Gorny & Owens*), for appellants.

*Lycette, Diamond & Sylvester,* by *Lyle L. Iversen,* for respondent J. E. Work, Inc.

*Karr, Tuttle, Campbell, Koch & Granberg,* by *John F. Kruger,* for respondent Fidelity & Deposit Company of Maryland.

OTT, J.†—J. E. Work, Inc., was awarded a construction contract for a part of the Randle-Yakima highway with the

\*Reported in 433 P.2d 896.

†Judge Ott is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

United States Bureau of Public Roads, Department of Commerce. On December 21, 1962, R. H. Lovell and Evan D. LaRue, partners, doing business as the Olympic Construction Company, were awarded a subcontract to perform some of the bid items of the prime contract. The subcontractor was to be paid the full unit price of the bid items it contracted to perform. The subcontractor's performance bond was furnished by Fidelity & Deposit Company of Maryland. (The partnership will hereafter be referred to as the Olympic Construction Company.)

After the work had commenced bid items 102(4) and 105(3) of the subcontract were deleted by mutual agreement. As the construction work progressed it became apparent that the Olympic Construction Company would not be able to perform its part of the subcontract within the time periods specified by the government's progress schedule. Thereupon, performance of the subcontract was continued according to the terms and conditions explained in a letter quoted as follows:

July 11, 1963

Olympic Construction Co.
P. O. Box 308
Port Angeles, Wash.

Re: Randle Yakima Hwy.

Gentlemen:

This will confirm our conversation on procedures to be followed on the Randle-Yakima Highway following the inspection made by Mr. J. E. Work and J. P. Lally of this company on July 1, 1963.

It has been apparent that Olympic Construction Co. will not be able to complete the work on this job as agreed to under subcontract to J. E. Work, Inc. This is borne out by a letter from the Bureau of Public Roads Resident Engineer dated July 5, 1963.

On July 1, 1963, Mr. Larue [sic] and Mr. Lovell of your firm requested that J. E. Work, Inc. move men and equipment on that portion of the job which is being worked on by Olympic Construction Company, in order to try to complete the work within the time limit specified in the basic contract. Mr. Lovell and Mr. Larue [sic] stated that Olympic Construction Co. could not possibly

complete the work with their forces. It was requested that J. E. Work, Inc. work on any and all items included under the Olympic Construction Co. subcontract in order that they could be completed. Payment by Olympic Construction Co. would be on the basis of time and material charges.

It was pointed out at that time and still is the position of J. E. Work, Inc., that we do not necessarily wish to perform work contracted by Olympic Construction Co. and would rather have Olympic Construction Co. complete the work themselves within the allotted time limit, or arrange to have it done. Olympic Const. Company, however, stated they preferred to have J. E. Work, Inc. equipment and men on the job as they are available at the site.

Therefore, J. E. Work, Inc. will furnish to Olympic Const. Co. all of its available equipment and personnel in the Packwood area to be used on any portion of Olympic contract that must be completed. Payment for this work will be as specified above. This will in no way relieve Olympic Const. Co. of its responsibility of completing the subcontract as agreed, and, should more equipment or men be needed, it will be the responsibility of Olympic Construction Co. to furnish it.

Very truly yours,
J. E. WORK, INC.
/s/ J. P. Lally
J. P. Lally, Sec'y.

/s/ R. H. Lovell

Olympic Construction Co.

J. E. Work, Inc., thereafter submitted daily reports of their man hours, equipment and materials furnished. Olympic Construction Company acknowledged in writing each day the receipt of the reports until near the completion of the contract. Each month J. E. Work, Inc., sent to Olympic Construction Company an itemized statement of the labor and manned equipment furnished by J. E. Work, Inc., and the amount it had charged Olympic Construction Company for the services rendered. The Olympic Construction Company received from J. E. Work, Inc., monthly payments and/or credits in the amount of the difference be-

tween the sum due under its subcontract and the amount J. E. Work, Inc., claimed for services performed. The Olympic Construction Company kept its crew and equipment working until approximately September 15.

Upon the completion of the construction project and its acceptance by the government in October 1963, an alleged outstanding credit balance existed in favor of J. E. Work, Inc. J. E. Work, Inc., commenced this action to recover from Olympic Construction Company and the surety company the sum of $28,547.49 which it alleged was due and owing for materials, labor and equipment furnished.

The cause was tried to the court which awarded J. E. Work, Inc., a judgment against the Olympic Construction Company and the Fidelity & Deposit Company of Maryland the sum of $27,248.28. From the entry of the judgment Olympic Construction Company has appealed.

Appellant first asserts that the cause of action was prematurely commenced for the reason that there was a pending claim with the government for additional compensation alleged due appellant for work performed on pay items attributable to its subcontract. Appellant's pending claim with the government is for the sum of $22,048.02. At a pretrial hearing the appellant moved to strike the cause from the trial calendar. The record before us establishes that the respondent disclaimed any interest in the appellant's claim with the government prior to trial. During the trial when the question was again raised, respondent, in writing, relinquished any and all interest in the claim. We agree with the trial court that appellant's claim is unrelated to any issue here presented. *Boespflug v. Wilson,* 58 Wn.2d 333, 335, 362 P.2d 747 (1961).

Appellant assigns error to the trial court's findings that the rates charged for labor and equipment supplied by respondent were reasonable. The appellant was apprised on a monthly statement the amount of the charges. No objection was made by appellant to the amount of the charges (except for one item which was thereafter settled by mutual agreement). The respondent's evidence established

that the rates were those customarily charged by the industry for like work and services rendered in the area. There is substantial evidence to support the trial court's factual finding in this regard and we will not disturb it. *Sigman v. Stevens-Norton, Inc.,* 70 Wn.2d 915, 919, 425 P.2d 891 (1967).

Appellant contends that it had not been paid its full unit price for bid items 450(2e), 453(1a), 453(1b), 520(4) and 520(7) totaling $23,181.50, that the sum of $6,587.70 had been paid leaving $16,593.80 unpaid. According to the letter of July 11, 1963, set out above, payment to respondent for services rendered to appellant was on the basis of time and material charges.

Respondent's complaint alleged in part:

Payment by Olympic Construction Company to be made to plaintiff on a time and material basis. Plaintiff did furnish such men and equipment, and a reasonable and agreed value thereof together with the amount of payments made by plaintiff to defendants under said contract exceed the amount earned by said defendants in the performance of said job by the sum of $28,547.49, and said defendants are indebted to plaintiff in said amount. Said indebtedness has been due and owing from October 16, 1963.

The trial court, after hearing the cause on its merits, stated:

[T]he basis of my oral decision in this case was the extent and reasonableness of services performed by the plaintiff for the defendant. Nothing else.

The numbered bid items involved payment to appellant for the installation of certain culverts. Appellant states that in Mr. Lally's (respondent's secretary) computation appellant was allowed its bid price in the sum of $6,587.70 for part of the culvert installation, but was not allowed its bid price credit in the sum of $16,593.80 for the remainder of the culvert installation.

The respondent had the burden of proof to establish its "time and material" furnished to appellant on these five questioned items. It established this method of payment on all the other bid items performed for appellant. It elected

to deprive appellant of the benefit of its contract on these five bid items.

In justification of respondent's method of allocation of credits Mr. Lally testified that "Olympic Construction Company didn't put all the pipe in on these various items. There was a certain amount of it that they asked us to do, and so therefore we physically bought the pipe and installed it, . . . ." And, Mr. Lally concluded: "[S]o that item would have been split up between the two contractors." We find nothing in the record which authorizes a "split up between the two contractors" of appellant's unit bid price as a method of payment to respondent for services rendered.

■ When, as here, a party to an *agreement* seeks a more beneficial payment basis than the one agreed upon (and pleaded), and offers no evidence to establish his claim upon the agreed payment basis, there is a failure of proof. Respondent had its day in court to establish its claim on a time and materials basis. It is an elementary rule of law that where there is a failure of proof there can be no recovery.

We find merit in this assignment of error. Appellant is entitled to a credit in the sum of $16,593.80.

Appellant next assigns error to the trial court's failure to allow $1,410 for work performed on bid item 102(4). On May 6, 1963, by mutual agreement, item 102(4) (hauling of borrow), was deleted from Olympic Construction Company's subcontract. Appellant contends that prior to May 6 it had stripped the overburden from the borrow pit. On May 15, appellant was allowed credit on respondent's books for the removal of 3000 cubic yards of overburden in the sum of $1,410. November 4, 1963, after the work was completed, this credit, previously granted, was disallowed. Mr. Lally, in attempting to justify the disallowance of this credit, said that "to his personal knowledge, Olympic Construction Company had not hauled any borrow." There was no contention that appellant had hauled borrow. The testimony is undisputed that appellant removed 3000 cubic yards of ov-

erburden in preparing the pit so that the borrow could be removed. The trial court made no specific finding on this issue (but did approve respondent's total amount in which this credit item had been deleted). The record does not justify the deletion of this credit. Appellant is therefore entitled to the restoration of $1,410.

We have considered appellant's remaining assignments of error and find them to be without merit.

September 24, 1965, the trial court entered judgment against both the appellant and the surety company in the amount of $27,248.28. The surety company was granted a judgment over in the like amount against the appellant. The surety company did not deem itself aggrieved by the entry of the judgment because it had been completely indemnified by a cash deposit against loss. It did not appeal. After the time had expired for the surety company to appeal and prior to the certification of the statement of facts, it was called to the attention of the trial judge that there had been no provision in the original judgment providing for a reduction or increase in the event the judgment over should be modified on appeal. On January 14, 1966, a hearing was had before the trial judge to correct the judgment in this regard.

After the hearing the judge stated that it was his original intention to grant judgment against the surety company and the judgment over only in such amount as it might be modified on appeal. January 26, 1966, the trial court granted the order correcting the judgment conditioned that such "correction shall be subject to leave of the Supreme Court . . . ." A stay of execution was likewise granted during the pendency of the appeal to the Supreme Court "unless sooner revoked by order of the Supreme Court."

Thereafter the surety company sought in this court leave for the superior court to correct its judgment in accordance with Rule on Appeal 15, RCW vol. 0, and to stay execution. The respondent moved to quash the proceedings for the reason that leave to correct the judgment had not been granted by the Supreme Court. On March 4, 1966, both

motions were heard before this court and on March 7 the following order was entered:

Ordered that execution on the judgment of September 24, 1965, is stayed pending determination of this appeal; conditioned upon the Fidelity & Deposit Company of Maryland accepting liability as surety for costs on appeal and for payment of interest on the September 24, 1965, judgment, as determined on appeal, until paid; and

It Is Further Ordered that the terms and conditions of the September 24, 1965, judgment and the effect of the correcting order of January 26, 1966, are passed to the merits.

Dated at Olympia, Washington, this 7th day of March, 1966.

■ This court having now heard the cause on the merits, considered the reasons given by the trial court relating to its correction of the original judgment, and having considered the untenable results which would flow from a denial of the trial court's authority to so correct its judgment, we do authorize the correction of the judgment as provided in Rule on Appeal 15, RCW vol. 0, and deny respondent's motion to quash.

The judgment in the sum of $27,248.28 is reduced by $16,593.80 and $1,410, leaving a remaining judgment in favor of respondent in the sum of $9,244.48 with interest from October 15, 1963. As so modified the judgment of the trial court is affirmed.

Since the appellant has substantially prevailed it will recover its costs on appeal. The cause is remanded to the trial court with instructions to modify the judgment in accordance with the views hereinabove expressed.

Finley, C. J., Hunter, Hamilton, and Neill, JJ., concur.

April 1, 1968. Petition for rehearing denied.