[No. 10-40104-2.   Division Two.   November 18, 1969.]

NORTHWEST PROPERTIES AGENCY, INC., *Respondent*, v. JOSEPH McGHEE *et al., Appellants.*

*Murray, Scott, McGavick & Graves* and *Frederick R. Hokanson,* for appellants.

*Conrad, Kane & Vandeberg* and *Elvin J. Vandeberg,* for respondent.

PEARSON, J.—This is an appeal by the defendant seller from a decree of specific performance of an earnest money receipt and agreement pertaining to 14 lots in Barker's Addition to the City of Tacoma. This real property borders Interstate 5 on the east and the Tacoma Mall properties on the west.

The defendants, Joseph C. McGhee and his wife, admitted signing an earnest money receipt and agreement in December, 1966. They contended to the trial court, however, that the earnest money agreement should not be specifically enforced, for four reasons:

1. The agreement was not signed by the purchasers by its termination date of December 30, 1966.

2. The purchasers, prior to signing, made a material change in the terms, thereby revoking the offer to sell.

3. The earnest money agreement, which called for a future real estate contract, was not certain enough for equity to enforce.

4. Part of the acceptance of the contract was oral, violating the statute of frauds.

The operative facts show that an employee of Northwest Properties Agency, Inc., Sherman Hale, acting for an undisclosed principal, Peter Wallerich, on December 29, 1966 came to the home of the defendants, Joseph McGhee and wife, ages 81 and 86 respectively, with a prepared earnest money receipt and agreement. (There was a dispute as to whether it was December 29 or December 30, which the trial court resolved in favor of December 29.)

The prepared earnest money agreement showed the plaintiff—"Northwest Properties Agency, Inc., Trustee"—as the purchaser. In its original form, the earnest money agreement called for a sales price of $30,000, to be paid with $7,500 down and the balance on a real estate contract at $500 or more per month, with interest at 6 per cent. The form also provided that sellers would pay a 10 per cent real estate commission. The sellers declined to sign the earnest money agreement in that form and after some negotiations the earnest money agreement form was changed, so as to call for a purchase price of $55,000, with a $9,000 down payment. At this time the following words were added at defendant's request, by Sherman Hale: "[C]ounter offer good until midnight of 30 December 1966 . . . "

Hale took the earnest money agreement as signed by the McGhees to Peter Wallerich, the undisclosed principal, where the following language was added: "[P]rovided that no restrictions to the utilization of the property exists by virtue of its proximity to the freeway."

While there is a dispute in the testimony as to when the changes in the earnest money agreement were approved by the purchaser, the trial court found that the acceptance was made on December 30, 1966, and that notice of acceptance was given to the sellers on December 31, 1966. Since there

was substantial evidence to support these findings, this court is bound thereby.

With reference to the title, the earnest money receipt and agreement contained the following provisions:

1. TITLE: Title of seller is to be free of encumbrances or defects, except: None
Existing reservations, existing easements, building or use restrictions general to the district, and building or zoning regulations or provisions shall not be deemed encumbrances or defects. Encumbrances to be discharged by seller may be paid out of purchase money at date of closing.

2. TITLE INSURANCE: Title is to be shown by title insurance report furnished by the seller within 30 days after loan approval if financing is provided for, otherwise 15 days. Seller authorizes agent to apply for such policy or report, showing condition of title within the specified time. The title policy to be issued shall contain no exceptions other than those provided for in said standard form plus encumbrances and defects noted in Paragraph 1 above. Delivery of such policy or title report to closing agent shall constitute delivery to purchaser. If title is not so insurable as above provided and cannot be made so insurable within one hundred twenty days from date of title report, earnest money shall be refunded and all rights of purchaser terminated: Provided that purchaser may waive defects and elect to purchase. If title is so insurable and purchaser fails or refuses to complete purchase, the earnest money shall be forfeited as liquidated damages unless seller elects to enforce this agreement or seek damages for breach thereof.

The earnest money receipt and agreement contained the following provision, pertaining to the type of future real estate contract to be executed:

7. CONTRACT PURCHASER: If this agreement is for sale on real estate contract, seller and purchaser agree to execute a Real Estate Contract for the balance of the purchase price on Real Estate Contract Forms L-37, . L-137, L-38 or L-138 of Washington Title Company, or Form 109 of Puget Sound Title Company, as se-

lected by agent. The terms of said form are herein incorporated by reference.

The earnest money receipt and agreement also contained the following acceptance and commission agreement:

14. ACCEPTANCE AND COMMISSION AGREEMENT: December 29, 1966. We approve this sale and agree to deliver deed or contract for deed in accordance with the terms of this agreement, and pay...........
................ agent, a commission of $ 10% for services rendered. In the event the Earnest Money is forfeited, the same, after deduction of expenses incurred by the agent, shall be divided equally between the seller and agent, providing the amount to agent does not exceed the agreed commission. I/we acknowledge receipt of a true copy of this agreement, signed by both parties. I agree to absorb a mortgage discount to finance this transaction, in an amount not to exceed ........% of the sale price.

..................... Joseph McGhee (signature)
Address                   Seller

.................... Jane McGhee (signature)
                          Seller (Wife)

A true copy of the foregoing agreement, signed by the seller, is hereby received on this 30 day of December, 1966.

W. W. Templin (signature)   ....................

Purchaser                Purchaser (Wife)

Plaintiff's exhibit 2, Washington Title Insurance Company real estate contract form L-37, was tendered to the defendants, together with the balance of the down payment of $9,000. Defendants refused to complete the transaction.

Plaintiff's complaint prayed for specific performance. Defendant's answer denied that a contract of sale had been executed and alleged as an affirmative defense that the transaction involved violated the statute of frauds.

We wish to dispose of one contention which is urged on appeal by the defendants, which does not appear to have been seriously advocated to the trial court. That argument was that the plaintiff, Northwest Properties

Agency, Inc., failed in its duty of undivided loyalty, good faith, and full disclosure to the plaintiffs. Defendant urges that an agency relationship stemmed from this transaction between the plaintiff and the defendant sellers and that a duty of undivided loyalty, good faith, and full disclosure was created. We are asked to read into the commission agreement the creation of an agency relationship and are then asked to void the transaction because of the failure of the plaintiff to disclose the identity of the buyer. We do not accept this argument. The plaintiffs did not proceed on the theory that they were agents of the sellers. Defendants did not seek to avoid this transaction by pleading agency, fraud, or breach of trust. The closest this issue was brought to the trial court's attention was when defendant's counsel sought to question plaintiff about what work he had performed in earning a real estate commission. This question was objected to and sustained by the trial court on the grounds that it involved an issue which had not been pleaded. There was no attempt by defendant to seek an amendment of the pleadings, to press for fraud or breach of trust, nor was there an offer of proof made, tending to show evidence of fraud or breach of trust by an agent. Such failure would, in our view, foreclose urging this issue on appeal. *Washington Cooperative Chick Ass'n v. Jacobs,* 42 Wn.2d 460, 256 P.2d 294 (1953).

In any event, we do not deem the commission agreement as the acknowledgment of an agency relationship between the plaintiff and the defendant. From the manner in which the transaction was handled, the commission agreement was simply a term of the original offer made by the plaintiff purchasers and was retained in the counteroffer transmitted by the defendant sellers to the plaintiffs. (It should be noted that the plaintiffs had sought a listing on the property several months before this transaction, but defendants had declined to list the property for sale with the plaintiffs.)

We shall now consider the remaining assignments of error. Did the addition of the following language constitute

a counteroffer by plaintiff purchasers? "[P]rovided that no restrictions to the utilization of the property exists by virtue of its proximity to the freeway."

The trial court concluded that this language added nothing new to the earnest money receipt and agreement "[S]ince the Earnest Money Receipt and Agreement had the same proviso in substance in Paragraphs 1 and 2 thereof." We agree with this construction of the contract.

Paragraph 1 of the agreement required title of the seller to be free of encumbrances or defects. "Existing reservations, existing easements, building or use restrictions general to the district, and building or zoning regulations . . . " were not to be considered as encumbrances or defects.

Paragraph 2 of the agreement required the seller to provide a title insurance policy containing no exceptions other than those provided in the standard form, plus those noted in paragraph 1.

Defendant seller argues that the proviso written in by the purchaser should be construed as adding a potential "defect" in the title which would not have been considered a defect in view of the provisions of paragraph 1. Thus, the seller is required by the proviso to furnish a better title than his original counteroffer contemplated.

To reach this construction, we would have to say that a use restriction by virtue of "proximity to the freeway" would constitute "building or use restrictions general to the district . . . "

In commenting on this proviso, the trial court stated:

[T]his is no more than a reiteration of the language contained in paragraphs 1 and 2 of the earnest money receipt and agreement. There might possibly be a different question raised if this lawsuit was turned around and the plaintiff was seeking to take advantage of that language, but in the light of the present factual situation it appears to the Court that nothing at all has been added to the contract by that language, . . .

Statement of facts at 49.

■ The general rule is that for an offer and acceptance to constitute a contract, the acceptance must meet and correspond with the offer in every respect. The corollary of this rule is that any material variance between offer and acceptance precludes formation of a contract. *Bond v. Wiegardt,* 36 Wn.2d 41, 216 P.2d 196 (1950); *Pearce v. Dulien Steel Prods., Inc.,* 14 Wn.2d 132, 127 P.2d 271 (1942).

The real issue raised here is whether the proviso added by the purchaser *materially* modified the quality of title the seller offered to furnish. If it did, then adding the proviso would constitute a rejection of seller's offer by counteroffer. *See* 16 A.L.R.3d 1424 (1967) for a collection of cases on this issue.

However, if the condition added by the intended acceptance can be implied in the original offer, then it does´ not constitute a material variance so as to make the acceptance ineffective. *Pickett v. Miller,* 76 N.M. 105, 412 P.2d 400 (1966).

■ We believe that the subject matter of the proviso, namely, "restrictions to the utilization of the property . . . by virtue of its proximity to the freeway" should be implied in defendant's offer to give title "free of encumbrances or defects," and should not be construed as "building or use restrictions general to the district." The latter phrase should be construed to include those building or use restrictions placed upon the property at the time the area was platted or developed. This is the type of restriction that would be "general to the area."

In the case at bar, a portion of defendant's property had previously been sold by defendants to the state for freeway purposes. Any restrictions that were imposed by that sale would not be "general to the district" but would be specific restrictions on the property retained. We therefore believe that the trial court was correct in holding that such restriction would, by implication, come within the terms of defendant's offer to give title free of encumbrances or defects.

It is well settled that an offeree's acceptance is not conditional and therefore insufficient merely because it

recites terms or conditions that would in any event have been implied from the original offer, inasmuch as such an acceptance introduces nothing new into the contract.

(Footnotes omitted.) 17 Am. Jur. 2d *Contracts* § 64 (1964) at 403; 16 A.L.R.3d 1429 (1967).

We now turn to the contention that the earnest money agreement was not certain enough for equity to enforce since it called for a future real estate contract in which the agent was given the authority to select from five different forms. The forms were incorporated into the earnest money agreement by reference as "Real Estate Contract Forms L-37, L-137, L-38 or L-138 of Washington Title Company, or Form 109 of Puget Sound Title Company . . . "

It is not contended that such forms did not exist or that there were material variances between them. Nor is there any contention that the form chosen (Washington Title Insurance Company Form L-37) contained any objectionable or contradictory provisions. (We note also that defendant had 17 years of experience in dealing in real estate transactions and for 4 years prior to the trial had been engaged in developing and selling real estate.)

The argument appears to be that because multiple forms were incorporated into the earnest money agreement by reference, a reasonable doubt exists as to the specific agreement equity is asked to enforce.

Such an argument would be more persuasive had the trial court been shown that the selection of different forms would have materially altered defendant's performance. In the absence of such a showing, the only question before us is whether or not it is permissible to incorporate a future real estate contract into an earnest money agreement by reference to a specific form, or by giving an agent authority to select one of several specifically identified forms.

No Washington cases have been cited which have held such a procedure is prohibited. In *Haire v. Patterson*, 63 Wn.2d 282, 386 P.2d 953 (1963) an earnest money agreement which called for a future real estate contract with no

reference to a specific form was held to be enforceable as a cash sale. In alluding to the procedure used here, the Supreme Court stated at 287, 288:

> It has been said that real estate contracts have become so standardized that, when parties enter into an earnest money agreement calling for a future contract, they must be held to have had in mind the provisions of a "standard" contract of sale. We know of no "standard" contract. However, if parties have a particular contract form in mind, it seems that they could evidence that fact by attaching a copy thereof to the earnest money receipt and making it a part thereof by reference, and we are aware of such a practice. We note the existence of printed earnest money agreement forms providing that the contract to follow shall be on a particular form, identified by number, publisher, and date of printing. And it would not seem an impossibility to prepare an earnest money agreement, printed or otherwise, containing within its four corners the material terms of the future contract of sale.

Plaintiff's exhibit 2, which was tendered to defendants in compliance with the earnest money agreement, is identified as "Washington Title Insurance Company Real Estate Contract Form L-37." Its publisher and form number are identified. It was selected by the agent. It bears no publishing date. It was not attached as an exhibit to the earnest money agreement. It contains no unusual terms or conditions, nor do its terms contradict any provision of the earnest money agreement.

We hold that such identification in the earnest money agreement is sufficiently certain that a court may grant specific performance as the trial court did here. We believe that this court should judicially recognize a well-established custom of long standing in the real estate industry.

While the better practice would be to incorporate by reference only one form and attach such form to the earnest money agreement, we do not find that the failure to do so is fatal to the transaction, absent some showing of prejudice to the party seeking to nullify the transaction. None

having been demonstrated here, the judgment of the trial court is affirmed.

ARMSTRONG, C. J., and PETRIE, J., concur.