Charles Anthony LOHMANN, Plaintiff-Appellant,

v.

Renna C. BELLAH et al., Defendants-Appellees,

and

George B. HALL, Third Party Defendant-Appellee.

No. 76–70.

United States Court of Appeals, Tenth Circuit.

April 28, 1971.

Preslie H. Brown, McAlester, Okl. (Newell Wright, Jr., McAlester, Okl., on the brief), for plaintiff-appellant.

Charles B. Neal, Amarillo, Tex. (Lockhart, Lindsey & Neal, Amarillo, Tex., on the brief), for defendants-appellees.

James B. Bratton, McAlester, Okl., for third party defendant-appellee.

Before LEWIS, Chief Judge, JOHNSEN,* Senior Circuit Judge, and HOLLOWAY, Circuit Judge.

PER CURIAM:

The appeal is from the dismissal at trial, after receipt of the plaintiff's evidence, of a diversity suit for specific performance of an option to purchase 4,390 acres of Oklahoma ranch land. We affirm.

Plaintiff had a lease upon the property for a term running from September 1, 1964, to September 1, 1968. Included in it was a provision that "Upon the termination, Lessee shall surrender possession of the leased premises; however, at such time, Lessee is to have an option to re-lease or to purchase the premises at a price that the Lessor would be willing to accept from another party". The de-

* Of the Eighth Circuit, sitting by designation.

fendant-owners sold the property in June, 1968, to third-party defendant George B. Hall.

It is sufficient here to deal with only two of the several alternative grounds upon which the court predicated its dismissal: (a) estoppel of the plaintiff to assert any right under the option; and (b) inadequacy of plaintiff's tender in any event as a specific-performance basis.

On the evidence in the record, the court was entitled to find the following facts. The defendant-owners (one of them representing all) had a number of conversations with plaintiff during the lease term about selling him the ranch. They quoted him at different times a successively lower price, each of which he rejected as being too high. By 1968, they had determined to get rid of the property in order to close up the estate, of which it was a part. They conferred with a real estate broker (third-party defendant Hall) and he advised that if they would give him an exclusive listing contract for a limited period at a sale price of $20.00 an acre, he believed that he could move the property on that basis. Before they were willing to so bind themselves, they informed plaintiff of what had transpired and offered to sell the property to him for the $20.00-an-acre price at which it would be listed.

Plaintiff declared that he was not interested in paying more than $10.00 or $12.00 an acre for the property. He told them, however, to "go ahead and list it" but "he didn't think it would sell". He further indicated that he would cooperate in showing the property and would give possession of it upon a pro-rata refund being made to him of the rent which he had paid. The lease had at that time approximately three months remaining of its term. Defendants thereupon, on June 12, 1968, entered into a listing contract with Hall. One of Hall's men thereafter talked with plaintiff about bringing out two prospective purchasers to see the property, and plaintiff reiterated his willingness to permit the showing of it in relation to the listing made.

Hall decided to take the property himself, and on June 28, 1968, he purchased it from the defendants at its $20.00 listing price, with the sale being subject to the payment of the regular broker's fee or commission called for by his listing contract, the same as on a sale by him to any other party.

Plaintiff in his testimony engaged in some equivocation as to part of the facts that have been set out, but certainty as to these aspects was established persuasively to the court by the testimony of the other witness called by plaintiff (one of the defendants). The court was entitled and required to resolve the facts upon all of the evidence adduced before it and in incidence to that responsibility to make credibility and weight evaluations between the testimony of the witnesses from manner, attitude or other demeanor engaged in by a witness as these aspects appeared to be affective in relation to the things testified to by him.

The facts stated above were all thus found by the trial court, explicitly or implicitly, and they cannot be declared to be clearly erroneous. As the matter thus stands before us, the situation appears to be one of conventional or classic estoppel. We regard it as plainly being within the operation of the general principles of that doctrine and the recognition and application of those principles made by the Oklahoma Supreme Court in such cases as Bowen v. Freeark, Okl., 370 P.2d 546; Gypsey Oil Co. v. Marsh, 121 Okl. 135, 248 P. 329, and other decisions.

The declarations, conduct, and other manifestations of apparent intention engaged in by plaintiff were such as the court was entitled to find could naturally be believed and relied on by the defendants to represent a refusal on his part to buy the property at $20.00 an acre; a consent on his part to defendants' selling the property at that price to another purchaser if they were able

to do so; an acquiescence to their entering into a listing contract for that purpose and thereby necessarily putting themselves into the obligational position of such a contractual relationship; and an agreement by him to relinquish possession of the property if such a sale ensued. And these things also were such as plaintiff necessarily should have expected would be so believed and relied on by the defendants. In the position of prejudice which has thus naturally resulted to the defendants, equity can, in good conscience, only regard the plaintiff as being estopped to try to assert any right to purchase the property under his option.

■ Turning to the second ground mentioned on which the court's denial of specific performance is entitled to be affirmed—inadequacy of plaintiff's tender—it is to be noted that plaintiff was not even seeking to have a sale made to him at $20.00 an acre, but only at $19.00. He took the position that the broker's fee of 5 percent or $1.00 an acre paid to Hall, was not required to be taken into account by him, but that he had a right to buy the property for the amount of the net realization to the defendants from the sale, which he says was only $19.00 an acre. But clearly, in legal situation and on the business reality of the obligation under the listing contract, the transaction was a sale for the price of $20.00 an acre and not $19.00 an acre. If plaintiff was entitled to have that aspect cancelled out in relation to defendants' selling the property through listing contract, the time for him to have attempted to do so was when the property was offered to him at $20.00 an acre before the listing was made. But plaintiff did not then want the property at either $20.00 or $19.00 an acre.

Thus plaintiff's offer to pay $19.00 an acre is unable to constitute a proper tender as a basis for any specific performance claim by him. As a matter of fact, no cash tender of $19.00 an acre has ever actually been made by him, nor has he deposited any money in court in connection with his complaint. He has merely offered in his complaint to make such a payment. He contends that such an offer to pay is legally sufficient as a tender for purposes of maintaining a specific performance suit. There is no need, however, to engage in any consideration of this contention, for any tender of $19.00, no matter how made, would in any event not be an adequate tender as a basis for seeking relief in the situation.

Affirmed.