[No. 47204–1. En Banc. October 1, 1981.]

NORTHWEST TELEVISION CLUB, INC., *Respondent,* v.
GROSS SEATTLE, INC., ET AL,
*Petitioners.*

974

R. *Michael Stocking* (of *Wettrick, Toulouse, Lirhus & Hove*), for petitioners.

*Orly J. Sorrel* (of *Nicolai, Sorrel & Binns*), for respondent.

[As amended by order of the Supreme Court February 9, 1982.]

WILLIAMS, J.—The lessor of a residential property seeks review of a Court of Appeals decision holding that the lessee effectively exercised its right of first refusal under the lease. Lessee cross–petitions seeking review of that portion of the decision which awards a reasonable rental to lessor.

On March 17, 1970, Northwest Television Club, Inc. (lessee), entered into a lease with Gross Seattle Properties, Inc., predecessor in interest to Gross Seattle, Inc. (lessor), to lease an old mansion in the Capitol Hill area of Seattle, commonly called the "Pink Palace". The lease included the following:

RIGHT OF FIRST REFUSAL TO PURCHASE

29. In the event Lessor during the term hereof receives a bonafide offer to purchase the property hereunder leased, which offer is acceptable to Lessor, Lessor agrees to notify Lessee in writing of such offer and to allow Lessee for three (3) days after receipt of such notice the exclusive right to purchase the said property in accordance with the terms of the said offer. In the event Lessee does not notify the Lessor in writing within 3 days after the receipt of such notice of his intent to exercise the right to purchase said property, then said exclusive right to purchase is to become null and void. It is understood, however, that the failure of Lessee to exercise such option shall in no way affect Lessee's rights under this lease, this lease remaining in full force and effect and any sale of the property hereby leased being subject to the rights of Lessee hereunder. This exclusive right to purchase as provided hereinabove is only good in event the Lessee has not defaulted on his rent.

Exhibit 8. Although the lease provided for a 3–day right of refusal period, the parties agreed at trial that the actual agreed upon right of refusal period was 5 days.

On April 2, 1974, the lessor sent the lessee written notice

that it had received a $90,000 offer which it found acceptable from a couple named Dorland. The $3,000 earnest money receipt and agreement attached to this notice stated, in part:

> This offer is subject to the sale of Purchasers home at 4602 E. Mercer Way, Mercer Island, within 90 days of acceptance of this offer.

Exhibit 1.

On April 4, the lessee delivered its own proposed earnest money receipt and agreement and a $3,000 note contingent upon acceptance. The agreement, which also recited a $90,000 purchase price, provided, in pertinent part:

> This offer is subject to the sale of home at 438 25th Ave. East, Seattle, Washington owned by principal stockholder of Corporation making this Agreement, within 90 days from date of acceptance of this offer.

Exhibit 2. Shortly thereafter, the lessee mailed a letter dated April 5, 1974, which notified the lessor of its intent to exercise the right of first refusal for "$90,000.00 cash, subject to the sale within 90 days of a residential property on 25th Avenue in Seattle." Exhibit 4. The lessor refused lessee's proposed earnest money receipt and agreement.

The third party purchasers, the Dorlands, did not buy the property, and the lessee remained in occupancy throughout the balance of the lease term, which expired June 30, 1975.

In July of 1975, lessee filed the present action seeking specific performance of its right of first refusal. On March 19, 1979, the trial court dismissed this claim on two grounds: first, that the right of first refusal did not come into play because the third party offer was conditional; second, that even if the conditional third party offer and acceptance had triggered the right of first refusal, lessee's right consisted at most of a right to purchase the property for $90,000 within 90 days. Since lessee's offer was conditioned on the sale of the 25th Avenue East residence, the court concluded that the offer was not on the same terms as the third party offer, and was, in effect, a counteroffer. The

court quieted title in the lessor and granted judgment for $35,739.34 plus interest, which was the reasonable rental value of the premises from July 1975 through February 1979, and for $4,000 in attorney fees and costs.[1] Because the court ruled that the attempted exercise of the right of first refusal was not effective, it did not hear evidence or rule upon any of the lessor's 12 affirmative defenses, including the defense that neither lessee nor Beryl Bedker, the principal stockholder, owned the property referred to in lessee's proposed earnest money receipt and agreement.

Lessee appealed. After oral argument, the Court of Appeals remanded the case to the trial court for a determination whether lessee was the "alter ego" of Bedker. The parties then stipulated that at the time the lessee attempted to exercise its right of first refusal, the lessee was Bedker's alter ego.

The Court of Appeals reversed in part and affirmed in part. *Northwest Television Club, Inc. v. Gross Seattle, Inc.*, 26 Wn. App. 111, 612 P.2d 422 (1980). The court held that (1) the right of first refusal came into effect upon notice to the lessee of the third party offer, even though that offer was subject to the condition precedent of the sale of the Mercer Island residence; and (2) the lessee's purported acceptance, which was conditioned upon an event within

---

[1]This is the second lawsuit between these parties, and both have reached the appellate stage. The first case, filed in early July 1975, was an unlawful detainer action against the lessee for holding over following the June 30, 1975 lease expiration date. The issue on appeal was whether it was error for the trial court, in an unlawful detainer action, to exclude evidence concerning the right of first refusal, except insofar as it pertained to a continued right of possession. Following trial, on August 18, 1975, the court found Beryl Bedker, principal shareholder of lessee, liable for unlawful detainer, and ordered restitution. Bedker appealed, and in an unpublished opinion filed in March 1979, the Court of Appeals affirmed. We denied review.

Although the record is far from clear, it appears that a stay bond in the unlawful detainer case was ordered, with the result that restitution was not made pending appeal. By the time this court denied review of that case in October 1979, the present case was pending in the Court of Appeals. Thus, lessee has paid neither restitution nor rent, although it has continued to occupy the premises since the date of expiration of the lease.

the lessee's control, was "in accordance with the terms of" the third party offer and thus constituted an acceptance rather than a counteroffer. Because it reversed the trial court's dismissal of the specific performance claim, the court also reversed the trial court's award of attorney fees to the lessor. Finally, the court affirmed the trial court's judgment in favor of the lessor for the reasonable rental value of the leased premises since the expiration of the lease, and remanded for determination of any additional amounts to which the lessor had become entitled since the date of judgment. *Northwest Television Club, Inc. v. Gross Seattle, Inc., supra.* In a subsequent order changing opinion, the court also directed that on remand the trial court consider lessor's 12 affirmative defenses. Lessee's cost bill for approximately $500 was denied by the Court of Appeals commissioner, who concluded neither party had substantially prevailed.

The question whether the lessee effectively exercised its right of first refusal should be considered in two parts: (1) whether the right of first refusal came into effect upon notice to the lessee of the third party offer, and (2) if so, whether the attempted exercise was in accordance with the terms of the third party offer.

▌ It is obvious that the third party offer, even though conditional on the sale of offeror's residence, was acceptable to lessor at the time it was made. Lessor's April 2, 1974 notice to lessee stated, in part:

> You Are Hereby Given Notice that Gross Seattle Properties, Inc., now Gross Seattle, Inc., has received a *bona fide offer* to purchase the property heretofore leased by you under Residential Lease dated the 17th day of March, 1970, which *offer is acceptable to Gross Seattle, Inc.,* a copy of which Offer is hereto attached.
>
> You Are Further Given Notice that under said lease it provides:
>
> > "After receipt by you of written notice of such *acceptable bona fide offer,* you have the exclusive right to purchase the said property in accordance with the terms of the attached offer and to notify Gross Seattle,

Inc. in writing, within five (5) days after receipt of this Notice, of your intent to exercise the right to purchase said property."

(Italics ours.) Exhibit 1.

Lessor now argues, however, that a conditional offer such as this third party offer does not give rise to lessee's preemptive right in the property. Lessor cites no persuasive authority. In *Shell Oil Co. v. Kapler,* 235 Minn. 292, 298, 50 N.W.2d 707 (1951), where a third party purchaser sought to buy a stated property subject to an option clause, the court stated that a purchaser would be financially able and ready to buy if he was "personally possessed of assets . . . which enable him with reasonable certainty to command the requisite funds at the required time . . ." Thus, where the third party purchaser had assets totalling only $100 to support an offer of $35,000, the offer was not effective to interfere with lessee's attempt to exercise the option to buy.

In this case, the third party purchasers alleged they were personally possessed of assets in the form of a residential property on Mercer Island. There is no allegation that this asset, if sold, was insufficient to establish financial ability on the part of the third party purchasers. Thus, we think lessor's acceptance of the third party offer reflects lessor's accurate perception that the third party purchasers were reasonably financially able.

This conclusion is supported as well by our reading of the entire lease agreement between these parties. Nowhere is it written that lessor will not consider conditional offers by third parties for the property; nor is it specified that conditional offers are not the kind of offers which will give rise to the right of first refusal promised to lessee by clause 29 of the lease. Lessor's April 2 notice to lessee would have been an entirely meaningless act if it were not lessor's expectation that the third party offer invoked lessee's preemptive right. Under these circumstances, and absent any relevant authority to the contrary, we conclude that the conditional offer and lessor's obvious intention to sell the property

brought into play lessee's right of refusal.[2]

 Lessor contends that even if lessee's preemptive right was invoked by the acceptable third party offer, lessee's attempted exercise of the right failed because it was "not in accordance with" the terms of the third party offer. As the Court of Appeals noted, general contract law governs the exercise of a right of first refusal and the relevant principles were summarized in the court's opinion. Thus,

> [a]n acceptance of an offer must always be identical with the terms of the offer, or there is no meeting of the minds and no contract. *Roslyn v. Paul E. Hughes Constr. Co.,* 19 Wn. App. 59, 573 P.2d 385, *review denied,* 90 Wn.2d 1012 (1978); *Blue Mountain Constr. Co. v. Grant County School Dist. 150–204,* 49 Wn.2d 685, 306 P.2d 209 (1957). A purported acceptance that changes the terms of an offer in any material respect may operate as a counteroffer, but it is not an acceptance and does not consummate the contract. *Roslyn v. Paul E. Hughes Constr. Co., supra; Blue Mountain Constr. Co. v. Grant County School Dist. 150–204, supra.* Any material variance between offer and acceptance precludes the formation of a contract. *Northwest Properties Agency, Inc. v. McGhee,* 1 Wn. App. 305, 462 P.2d 249 (1969). If the intended acceptance adds a condition that can be implied in the original offer, then the condition is not a material variance rendering the acceptance ineffective. *Roslyn v. Paul E. Hughes Constr. Co., supra; Johnson v. Star Iron & Steel Co.,* 9 Wn. App. 202, 511 P.2d 1370 (1973); *Northwest Properties Agency, Inc. v. McGhee, supra.*

*Northwest Television Club, Inc. v. Gross Seattle, Inc., supra* at 116–17; *see also* 51C C.J.S. *Landlord and Tenant* § 88(1) (1968).

Authority on what constitutes a material variation is meager, and results vary based on the particular facts of

---

[2]Indeed, numerous courts have held that the right of first refusal ripens when the owner forms a specific intention to sell the property. *Superior Portland Cement, Inc. v. Pacific Coast Cement Co.,* 33 Wn.2d 169, 205 P.2d 597 (1949); *Tribble v. Reely,* 171 Mont. 201, 557 P.2d 813 (1976); *Weintz v. Bumgarner,* 150 Mont. 306, 313, 434 P.2d 712 (1967); *Anderson v. Armour & Co.,* 205 Kan. 801, 473 P.2d 84 (1970). Here, acceptance of the conditional offer clearly confirms lessor's intent to sell.

each case. In *Chevy Chase Servs., Inc. v. Marceron*, 314 F.2d 275 (D.C. Cir. 1963), a lessee, who had the right to purchase at the same price and on the same terms and conditions as offered by a prospective purchaser, did not make an offer on the same terms and conditions when the prospective purchaser offered a part payment of $125,000 with a first trust for the balance of $110,000, and the lessee offered $25,000 cash, $100,000 at closing from a loan secured by a first trust, and the remaining $110,000 secured by a trust to be subordinated to the first trust. The court concluded, at page 276:

> The seller's right to the security of a first trust upon completion of the sale is not vitiated by the buyer's right to subordinate that trust after completion of the sale. The right to a senior lien at closing still retains sufficient substance to preclude the view that it may be satisfied by a junior lien.

In *Lohmann v. Bellah*, 441 F.2d 458 (10th Cir. 1971), the court held there was a "material variation", where the third party purchaser of real estate offered $20 per acre and the tenant, exercising its right of first refusal, offered $19 per acre.

It has also been held that lessee's offer matches a third party purchaser's offer "only if the essential terms of the offers are identical." *Coastal Bay Golf Club, Inc. v. Holbein*, 231 So. 2d 854, 858 (Fla. Dist. Ct. App. 1970). Thus, where both the purchase price and the amount of interest were different, the two offers were held to be not sufficiently similar.

▮ In the present case, any variation in the two offers was less substantial than those described above. The purchase price was the same: $90,000. The condition was the same: sale of another residence in order to finance the purchase. The time after acceptance within which the sale of the other property must be made was the same: 90 days.

The only variation of any substance between the two offers was that the third party offerors held title to their residence while lessee's principal shareholder Beryl Bedker,

formerly Beryl Kahler, not lessee itself, claimed to own the residence referred to in lessee's offer. However, the record does not indicate that a distinction was made by the parties or the court as to the identity or ownership of the property insofar as the willingness and ability of the lessee to sell the property as part of the offer was concerned. The parties stipulated in the Court of Appeals that Mrs. Bedker was the alter ego of the lessee corporation at the time the offer was made.[3] Lessor never rejected the offer for the reason that lessee's principal stockholder and not lessee held title to the property, and such a defense to the action was not specifically raised in the pleadings. In fact, the record indicates that lessor treated lessee's and Bedker's interest in the property as the same. Indeed, lessor in its April 5, 1974, letter to its attorney, exhibit 7, enclosing the purchase offer and earnest money stated the documents were "from Mrs. Kahler of N. W. Television Club Inc." Further, in its "Notice to Terminate Tenancy" 3 months later, exhibit 10, lessor noted that it was not waiving any defaults of lessee "in failing to exercise *her* right of first refusal to purchase the above described real property by *her* failure to submit an offer in accordance with the terms accepted by Lessor from its proposed purchaser on the agreement dated March 28, 1974." (Italics ours.) In addition, lessor brought the

---

[3]The Court of Appeals and the parties to the stipulation described the relationship of the corporation to Mrs. Kahler as being her "alter ego". Such a theory is ordinarily used to fix liability on an individual who is seeking to escape liability by hiding behind the corporate veil. That is not the situation in this case. We interpret the use of the term merely as a means of describing Mrs. Bedker's control and ownership of the lessee corporation and thus its ability to sell her property as part of the lessee's offer.

Although the trial court has not yet ruled on lessor's affirmative defenses, we note that one such defense alleges that lessee did not own the residence referred to in its offer. This defense of course raises an issue of good faith and lessee's reasonable financial ability to complete the sale. Any lessor which grants a right of first refusal to a tenant, however, takes a risk that it may lose a sale to a third party because of the inability of the tenant to perform after the acceptance of its first refusal offer and the resultant extinguishing of the third party offer. It is assumed that a lessor who grants this valuable prerogative to its tenant receives something in return for its agreement to assume the additional risk.

unlawful detainer action in the following year against Beryl Kahler, a single woman, and Northwest Television Club, Inc. It follows that lessor was at no greater disadvantage by the ownership status of the residence mentioned in lessee's offer than by that contained in the third party offer, and the Court of Appeals so held.

Although lessor argues that the lessee could not meet the condition in the third party offer unless lessee could sell the Mercer Island residence, we think such a requirement is unreasonable. The condition was nothing more than the offeror's attempt to arrange financing, and it would be completely unrealistic to require a lessee's financing condition to rest on the sale of another's property. In effect, lessor desires to grant *better* terms to the third party offeror than to the lessee. Lessor would have us sanction an arrangement in which it gave the third party 90 days to arrange financing; but lessor would require lessee to come up with cash in 5 days. Such a requirement renders illusory lessee's "right" of first refusal, a bargained-for privilege for which lessee gave valuable consideration. It is difficult to imagine the parties could have intended such a result, and no such intent appears from the lease agreement. Accordingly, we hold that there was no material variation in the terms of the two offers.

Although the Court of Appeals held that there had been a valid exercise of lessee's right of first refusal, the court correctly concluded lessee was not entitled to legal possession until closing. *Rigby v. State,* 49 Wn.2d 707, 710, 306 P.2d 216 (1957). Apparently because this event did not occur, the court held the lessee never became entitled to possession and therefore should pay accumulated rent for its occupancy up to the present. Lessee's proposed earnest money agreement did, however, set the time for closing at 90 days after the furnishing of a title insurance policy or report. The record does not disclose whether any such policy or report was ever issued.

The parties agree that when a decree of specific performance is entered, the court has the power to consider

equitable compensation between the parties in the nature of an accounting. That is, the decree should place the parties, as far as possible, in the condition in which they would have been if the contract had been duly performed at the time the conveyance should have been made. *See Coleman v. Dawson,* 110 Cal. App. 201, 294 P. 13 (1930); 7 A.L.R.2d 1204–34 (1949); 71 Am. Jur. 2d *Specific Performance* § 216 (1973). Once a lessee exercises an option, including a right of first refusal, the landlord/tenant relationship ceases, and lessee becomes a vendee. *Paullus v. Fowler,* 59 Wn.2d 204, 215, 367 P.2d 130 (1961); 51C C.J.S., *supra.* If lessee acquires the property in accordance with the terms of the offer, it is no longer a tenant and owes no rent from the time of acquisition.

Where, as here, a vendee has remained in possession pending the outcome of litigation, the general rule has been stated as follows:

> If the vendee has been in possession, he will be held for interest from the time he should have accepted a conveyance. Of course if the purchaser has been in possession of the property throughout the delay, as in the case of a lessee enforcing an option to purchase at the termination of the lease, or that of a "land contract," *he is chargeable with interest on the purchase price during the delay, but not with the rent.*

(Footnotes omitted. Italics ours.) 71 Am. Jur. 2d, *supra* at 283. *Accord, Phillipp v. Curtis,* 35 Wn.2d 844, 848, 215 P.2d 431 (1950); *Ellis v. Mihelis,* 60 Cal. 2d 206, 220, 384 P.2d 7, 32 Cal. Rptr. 415 (1963); *Myers v. Lovetinsky,* 189 N.W.2d 571 (Iowa 1971); *Capitol Land Co. v. Zorn,* 134 Ind. App. 431, 184 N.E.2d 152 (1962); *Re v. Wells Fargo Bank,* 269 Cal. App. 2d 783, 788, 75 Cal. Rptr. 367 (1969); *Greenstone v. Claretian Theological Seminary,* 173 Cal. App. 2d 21, 36–37, 343 P.2d 161 (1959); *Ruark v. Peterson,* 30 Colo. App. 162, 491 P.2d 75 (1971).

Applying these principles to the present case, it is plain that if the closing had occurred as specified in lessee's proposed earnest money agreement, lessee would have become

vendee on that date. As vendee, lessee would have been entitled to possession and would have accordingly been discharged of any obligation to pay rent thereafter. *Phillipp v. Curtis, supra.* Since lessee remained in possession pending outcome of this litigation, it is chargeable not with rent, but with the interest on the purchase price as specified in lessee's proposed earnest money agreement for the duration of the delay between closing and the present.[4] *Phillipp v. Curtis, supra.* This is merely an application of the familiar principle, stated above, that the parties should be placed as nearly as possible in the same position they would have occupied had the conveyance been made as specified in the contract.

The final question we must decide is whether lessee is entitled to costs under these circumstances. The Court of Appeals commissioner ruled that lessee's cost bill of $496.72 should be denied because neither party "substantially prevailed". Lessee prevailed on the specific performance issue, but lessor prevailed on the rents and profits issue, receiving a judgment for $35,739.34 plus additional amounts since the date of judgment.

RAP 14.2 provides that no costs will be awarded on review where there is no "substantially prevailing party", but the cases are not uniform in specifying what is "substantially prevailing" for purposes of the rule. *See J.E. Work, Inc. v. Lovell,* 72 Wn.2d 516, 523, 433 P.2d 896 (1967); *Goedecke v. Viking Inv. Corp.,* 70 Wn.2d 504, 424 P.2d 307 (1967); *Ennis v. Ring,* 56 Wn.2d 465, 341 P.2d 885 (1959). It is clear, however, that each party partially prevailed in the Court of Appeals, and that in those circum-

---

[4]The Court of Appeals held otherwise. Although the court's reasoning on this point is not persuasive, it perhaps can be explained by the result in the prior unlawful detainer action between these parties. In that case, it bears repeating, the Court of Appeals held the lessor had the right to possession, and this court denied review on the issue whether it was error to exclude evidence on the right of first refusal provision. The right referred to, of course, was lessor's possession as *landlord.* Here, the possession at issue is lessee's possession as *vendee after closing.*

stances the court commissioner was correct under the rule and the case law to deny costs. Here, however, lessee has prevailed on both major issues, and we hold it is therefore entitled to its costs on appeal.

The Court of Appeals is affirmed in part, reversed in part, and the cause is remanded to the trial court for further proceedings consistent with this opinion on lessor's affirmative defenses to specific performance.

ROSELLINI, DOLLIVER, HICKS, and DIMMICK, JJ., concur.

BRACHTENBACH, C.J. (dissenting)—I agree with the Court of Appeals that:

> The sole issue we must decide is whether the lessee corporation's offer to purchase, which was conditioned upon the sale of the residence of an unspecified principal shareholder of the lessee corporation, was "in accordance with the terms of" the third party's offer to purchase, which was conditioned upon the sale of the third party's residence.

*Northwest Television Club, Inc. v. Gross Seattle, Inc.,* 26 Wn. App. 111, 115, 612 P.2d 422 (1980). Because I conclude that the lessee's offer was not "in accordance" with the first offer but rather constituted a counteroffer which the lessor was not bound to accept, I dissent.

The majority correctly concludes that the original offer was acceptable to the lessor. As required by the lease, lessor informed lessee of the offer's acceptability and of the lessee's resulting "exclusive right to purchase the property in accordance with [its] terms". It is axiomatic that when a contract provides for an option to purchase effective upon receipt of notice, that the act of notification activates the lessee's right. *Chournos v. Evona Inv. Co.,* 97 Utah 335, 93 P.2d 450, *rehearing denied,* 97 Utah 346, 94 P.2d 470 (1939); 51C C.J.S. *Landlord and Tenant* § 88(3) (1968). The majority's discussion of the acceptability of conditional offers (majority opinion, at 979–80) is therefore confusing[5]

---

[5]Indeed, footnote 2 in the majority opinion is grossly misleading. All cases

and unnecessary.

Our analysis should focus instead on the validity of the lessee's attempted exercise of its first refusal right. Said right in this case was to purchase the leased property "in accordance with the terms" of the Dorlands' offer, which was conditioned on the sale of their Mercer Island home within 90 days. The lessee notified the lessor that it wished to purchase the property for $90,000 but conditioned payment on the sale of a different residential property in Seattle, owned by the corporation's principal shareholder, within the same time period.

As the majority and the Court of Appeals noted, general contract law governs the exercise of the right of first refusal. Majority opinion, at 980. *Northwest Television Club, Inc. v. Gross Seattle, Inc.,* supra at 116–17. For an offer and acceptance to constitute a contract, acceptance must meet and correspond with offer in every material respect. *Northwest Properties Agency, Inc. v. McGhee,* 1 Wn. App. 305, 462 P.2d 249 (1969). Purported acceptances which vary materially act instead as counteroffers. *Roslyn v. Paul E. Hughes Constr. Co.,* 19 Wn. App. 59, 573 P.2d 385, *review denied,* 90 Wn.2d 1012 (1978).

I would hold that lessee's purported exercise of its first refusal right was actually a counteroffer, materially varying from the terms of the offer it was empowered to accept. The Dorland offer was conditioned on the sale of a property known to the lessor. Appellant had an opportunity to inquire as to the Dorland home's sales price and terms before finding that offer "acceptable". In contrast, the lessee's offer was conditioned on the sale of a property unknown to the lessor for an undisclosed price at uncertain terms, indeed not even owned by the lessee. The lessee, or perhaps the principal stockholder, had exclusive and unre-

cited for the proposition that the right of first refusal arises when the owner forms a specific intent to sell the property are distinguishable. They involve contracts which provide that the first refusal right ripens at that time, as opposed to when an acceptable offer is received. *See generally* R. Schoshinski, *American Law of Landlord and Tenant* § 9.9 (1980).

stricted power to set the sales price and terms. By manipulating these variables, lessee could either insure an immediate sale or as easily scare off all potential purchasers. Thus, with respect to the probability of the satisfaction of the conditions of purchasing the leased property, the Dorlands' and lessee's offers differed materially.

This variation is commercially important because lessees in respondent's position would otherwise be able to significantly hamper their landlords' attempts to sell their own property. Simply by matching outsiders' conditional offers with offers conditioned on events within their control, the landowner could be forced to turn away any number of interested purchasers while lessees would rarely be forced to buy.

In order to purchase the land "in accordance with the terms of" the outside offer, how then would a lessee match an offer conditioned on the sale of a particular piece of property? To answer this question we should ask ourselves what it was that the lessor was willing to accept. In this case appellant was willing to sell for $90,000, and was satisfied that the potential outside buyer with that particular residential property would probably have that sum within 90 days. The tenant then has the right to decide if he wants to pay that same price within 90 days. This way the lessor's ability to alienate his property would not be unreasonably restricted, in furtherance of that strong policy of the law. *Seattle–First Nat'l Bank v. Crosby*, 42 Wn.2d 234, 254 P.2d 732 (1953). In addition, the cases cited by the majority in its discussion of material variation suggest no different result. In each of those cases a price or financing term offered by the lessee differed materially from the outsider's offer. In this case the chances for the very conclusion of the sale could vary materially with the ultimate control vested in the lessee or the principal stockholder.

Crucial to this determination is the understanding that a right of first refusal is not a right to impede the alienation of land. This lessee bargained only for the right to protect its investment by purchasing at a price acceptable to the

lessor when the latter chose to sell. Because the condition attached to lessee's promise to pay $90,000 could significantly alter the inevitability of the sale itself, it varies materially from the third party offer. I would therefore rule that its exercise of the first refusal right was ineffective.

STAFFORD and UTTER, JJ., concur with BRACHTENBACH, C.J.

Reconsideration denied February 9, 1982.