[No. 38843. Department Two. May 16, 1968.]

BENNETT VENEER FACTORS, INC. *Appellant,* v. JOHN BREWER et al., *Respondents.**

*Torbenson, Thatcher, Stevenson & Burns,* for appellant.

*Frank R. Manning* (of *Campbell, Manning & Price*), for respondents.

NEILL, J.—Plaintiff (appellant) brings an action for damages and loss of profits claiming that defendants have breached a contract wherein plaintiff was given a preemptive right to purchase all logs which defendants cut from two particular tracts of United States Forest Service lands. At the conclusion of plaintiff's case on the issue of liability,

*Reported in 441 P.2d 128.

defendants moved to dismiss on the grounds that plaintiff had failed "to substantiate the essential allegations of the complaint."[1] The motion was granted and plaintiff appeals.

A separate trial was contemplated on the damages issue. CR 42 (b), RCW vol. 0.

Plaintiff sets out seven assignments of error, mainly challenging the trial court's findings of fact, but admits that all assignments involve essentially a single question, namely, whether there was substantial evidence that the parties had entered into a valid contract, breached by the defendants, whereby plaintiff had a first refusal right to purchase certain logs from the defendants.

■ The trial judge announced in his oral opinion that he was weighing the evidence. Therefore, we are governed in this appeal by the rule set forth in *Cowitz v. Miller*, 68 Wn.2d 637, 414 P.2d 795 (1966):

> When the trial court has weighed the evidence and has apprized this court by findings of fact of the evidence it found credible or of the facts it found which would prevent plaintiff from recovering, this court will accept the findings of fact as verities unless we determine that there is no credible and substantial evidence to support the findings. We cannot, however, substitute our findings for those of the trial court.

The issues presented to us arise from a rather complicated background of financial difficulties involving a veneer plant (Fish Veneer, Inc.), the plaintiff (a veneer broker who attempted to assist Fish Veneer), and the defendants who were also involved in Fish Veneer's financial troubles. In 1960, Fish Veneer's predecessor in interest obtained two timber contracts from the United States Forest Service.

---

[1]This motion was apparently treated by the trial court as a challenge to the sufficiency of the evidence, although in the judgment it is referred to as a motion for involuntary nonsuit. Plaintiff's brief refers to the motion as a challenge to the sufficiency of the evidence and defendants' brief does not contest this designation. We will treat the case as having been determined on a challenge to the sufficiency of the evidence. However, these motions serve different purposes and under some circumstances this distinction could be vital. See Trautman, *Motions Testing the Sufficiency of the Evidence*, 42 Wash. L. Rev. 787 (1967).

That contractor then employed defendants to construct logging roads on these timber tracts. In 1963, plaintiff contracted for the purchase of the entire production of the Fish Veneer plant and at this time also loaned Fish Veneer approximately $40,000 for operational funds. To secure this loan, plaintiff took an assignment of the two government timber contracts and assignments of Fish Veneer's accounts receivable. Further, plaintiff agreed to pay Lacey Plywood Company the balance owing by Fish Veneer on a machinery contract. Fish Veneer was also in arrears on a $350,000 Small Business Administration loan. In fact, continuation of Fish Veneer plant operations was in jeopardy. Plaintiff, apparently in order to obtain the veneer production from this plant, entered into a plan whereby it rented the Fish Veneer plant, furnished logs or money for logs, and in return received the veneer. Fish Veneer's creditors were to be paid through the rentals to be paid by plaintiff. This plan later became part of a state court composition in Lewis County.

Before this financing scheme could be put into operation, defendants advised Fish Veneer by letter of May 5, 1964, that delinquent road construction costs of $167,991.36 must be paid before any further logging would be permitted in the government tracts.

On May 15, 1964, a meeting was held at which all involved parties were either present or represented by counsel. At this meeting, defendants produced an estimate showing the prices at which the timber remaining to be cut from the government tracts would have to be sold in order to produce a profit. These estimates were $75 per thousand board feet for fir and $50 per thousand board feet for hemlock. At this meeting defendants' counsel dictated (and subsequently mailed to plaintiff) a letter summarizing the agreement reached by the parties, to wit: defendants would take over the government timber contracts and log the tracts; all road construction indebtedness to defendants would be cancelled; defendants would assume and pay the Small Business Administration loan; and *"That all logs pro-*

*duced under the Forest Service contracts and in the entire area will be offered to Bennett Veneer Factors on a first-refusal basis."* (Italics ours.)

The parties to this financing and operations arrangement, with the exception of plaintiff, met again on June 2, 1964, at which time defendants offered to sell the logs to plaintiff at prices of $80 for fir and $56 for hemlock. During the meeting, defendants' counsel telephoned plaintiff's counsel in Seattle and relayed the new price quotation to him. Plaintiff's attorney then called plaintiff in Oregon regarding this offer. Plaintiff refused the offer. There is a dispute as to whether the new price quotation related to all the subject logs or to only a portion thereof. The trial court found that all the logs were included in the higher quotations, and that plaintiff did not communicate to defendants that its rejection of the new prices related to less than all the logs. It is not disputed that, during their telephone conversation, the attorneys for plaintiff and defendants discussed the difference between the prices being quoted to plaintiff and a $3-per-thousand lower price being quoted by defendants to other potential buyers. The trial court found that the prices quoted in the May 15th estimate were not firm or agreed prices, but were only an indication of a price level at which a profit could be made.

The defendants thereafter refused to sell plaintiff any logs. Due to a log shortage in the area, plaintiff was unable to purchase logs elsewhere and was unable to continue to operate the Fish Veneer plant.

Plaintiff contends that defendants entered into a contract to sell the logs to a third party at a price less than that quoted to plaintiff on June 2d, and that such contract was executed prior to the June 2d price quotation to plaintiff. The trial court found, however, that this sale and sales of logs to other third parties occurred subsequent to June 2d. The log sales subsequently made by defendants to third parties were essentially at prices of $77 for fir and $53 for hemlock, thus giving rise to plaintiff's contention that defendants violated the "first refusal right" portion of the

May 15th agreement. Plaintiff produced testimony that it would have paid the $77 and $53 on June 2d.

 Among the findings challenged by the plaintiff is finding of fact No. 11:

> The Court finds there was no meeting of the minds on the claim proposed by plaintiff that it had a continuous right of first refusal and no contract between the parties enforceable by the plaintiff, nor any breach of any contract by the defendants.

This paragraph contains mixed findings of fact and conclusions of law and is somewhat sketchy and ambiguous. Nevertheless, we will read this finding in context with the court's other findings and in light of the court's oral opinion. *Northern Pac. Ry. v. Washington Util. & Transp. Comm'n,* 68 Wn.2d 915, 416 P.2d 337 (1966). From this reading, it appears that the trial court intended a finding that the preemptive right agreement of May 15th did not continue after the rejection by plaintiff of the June 2d price quotation. At least a reading of colloquy between the trial court and counsel during the argument on the motion would indicate that such was in the court's mind. If we accept finding of fact No. 11 to be a determination that the parties did enter into a contract of preemptive right, but that such contract was terminated by plaintiff's rejection on June 2d, we agree that the record will support such a finding.

 We have recognized the validity of a contractual limitation on the right of an owner to sell his property and the correlative right of a prospective purchaser to buy property on the seller's terms. This contractual arrangement differs materially from an option. See *McIntosh v. Alger,* 62 Wyo. 401, 167 P.2d 964 (1946); 1A Corbin, Contracts § 261 (1963). The normal option contract is a complete, valid and binding agreement by the terms of which a collateral offer is kept open for a specified period of time. The offer thus extended must contain the same certainty as is required in any offer, the acceptance of which will result in a contract. In a preemptive right contract, sometimes called a "first refusal" right, there is an agreement contain-

ing all essential elements of a contract, the terms of which give to the prospective purchaser the right to buy upon terms established by the seller; but only if the seller decides to sell. The corollary, even if unspoken or unwritten, implies an agreement by the owner that he will not sell to any other party at any more favorable terms—thus its common name—a first right to accept or reject any offer which the promisor may make. We analyzed such an agreement in *Superior Portland Cement, Inc. v. Pacific Coast Cement Co.*, 33 Wn.2d 169, 205 P.2d 597 (1949).

The May 15th agreement provided that *all* logs produced under the Forest Service contracts would be offered to plaintiff on a first refusal basis. This provision seems clear and unambiguous. In view of the negotiations, and the posture of the parties at the time of the contract of May 15th, it was obvious to all parties that the purpose of plaintiff's participation in the scheme was to obtain logs to keep the Fish Veneer plant in operation to provide plaintiff with his merchandise, namely, veneer. It is manifest that plaintiff's right of first refusal continued so long as defendants continued selling any of the logs. In other words, had the defendants offered portions of the total number of logs for sale at different times, then plaintiff would have had the right of first refusal on each offer. However, nothing in the May 15th agreement prohibited the defendants from offering to sell *all* the logs at one time, and in such event plaintiff's right of first refusal would apply only to that single offer. The court found that defendants offered *all* the logs for sale on June 2d and plaintiff, in effect, refused to purchase the logs. There is substantial evidence to support this finding. As indicated earlier, at the time defendants were making this offer to plaintiff, they were also quoting prices for the logs to other potential buyers. If the prices quoted to plaintiff were at least equivalent to those quoted to other buyers, then plaintiff's preemptive rights in the logs ceased when it refused to accept the defendants' offer of June 2d. However, if the prices quoted to plaintiff were not equivalent, then plaintiff had the right to reject that offer and buy

the logs at the lower prices being quoted to the other buyers.

The trial court made no specific findings as to whether the prices quoted to plaintiff on June 2d were equivalent to prices of the sales to third parties. The court does state that there was no "breach of any contract by defendants" and may have intended thereby to answer this issue indirectly. However, this is merely conjecture on our part. The court should have made specific findings on this issue. CR 52 (a) (1). At the time defendants' offer was relayed to plaintiff's attorney, as well as during the course of the trial, defendants attempted to justify the difference between the prices quoted to plaintiff and those quoted to other buyers on the basis of a higher cost of transporting the logs from the timber tracts to plaintiff's mill. Defendants claim that, taking into consideration the cost of transporting logs to plaintiff as compared with the cost of transporting them to the third party buyers, the prices quoted to plaintiff were equivalent to the prices quoted to the other buyers. On the other hand, plaintiff produced evidence that the price differential was not justified by higher transportation costs; that the quoted prices discriminated against plaintiff; that plaintiff would have purchased the logs had the price truly been equivalent to the prices quoted to other buyers; and that the damages suffered by plaintiff as a result of a log shortage would thus have been avoided. Plaintiff also produced evidence indicating that defendants sold some logs to other buyers at prices lower than the prices originally quoted to those buyers.

If plaintiff's contentions on this point are correct, the defendants breached the May 15th agreement granting plaintiff a right of first refusal on the logs when they offered those logs to plaintiff at prices higher in fact than prices quoted to other buyers. In *Superior Portland Cement, Inc. v. Pacific Coast Cement Co., supra,* which involved a right of first refusal provision in a lease, we stated at 199:

Appellant became entitled to exercise its option [preemptive right] if and when respondent, during the

term of the lease, decided to sell, and was contingent upon the happening of that event. The price which respondent was required to quote to appellant was the figure at which respondent was willing to sell or which, at any time, it offered to sell the properties to others.

Respondent was not free to quote one price to appellant and then, as the result of negotiations with other parties, sell to another at a less price than that quoted to respondent (*sic*) [appellant]. Respondent was free to negotiate with other parties and obtain the highest offer it could obtain for the properties, but if, during the term of the lease, respondent obtained an offer from another at which it was willing to sell the properties, respondent was obligated to accord to appellant the right to purchase at that price.

This same result is reached irrespective of whether it is specifically provided for in the agreement. It is implied from the use of the term "first refusal." The phrase "first refusal right" and terms of similar import have a well understood meaning in the business world which is that the owner of such a contract right is entitled to the opportunity to buy the subject property on the same terms contained in a bona fide offer from a third party acceptable to the owner of the goods. *Gochman v. Draper,* 389 S.W.2d 571 (Tex. 1965); *King v. Dalton Motors, Inc.,* 260 Minn. 124, 109 N.W.2d 51 (1961); *Vandenbergh v. Davis,* 190 Cal. App. 2d 694, 12 Cal. Rptr. 222 (1961); *Tamura v. DeIuliis,* 203 Ore. 619, 281 P.2d 469 (1955).

The evidence established an enforceable contract granting plaintiff a right of first refusal on the logs in question. However, the trial court failed to make sufficient findings of fact with respect to the issue of whether plaintiff was offered the logs at prices equal or equivalent to those involved in the sales of the logs to other parties.

Therefore, we must remand the case to the trial court with instructions to make such findings of fact and for such further proceedings as are consistent with this opinion. It is so ordered.

FINLEY, C. J., HAMILTON, J., and LANGENBACH, J. Pro Tem., concur.