[No. 10525–6–I.   Division One.   February 21, 1984.]

RICHARD MATSON, ET AL, *Respondents,* v. GILBERT N. EMORY, ET AL, *Appellants,* MERLE TEARE, ET AL, *Respondents.*

*Foster, Pepper & Riviera, Richard E. Keefe, William H. Ellis, Jr.,* and *Carrie L. Schnelker,* for appellants.

*Anderson, Hunter, Dewell, Baker & Collins* and *Robert Willoughby,* for respondents Matson.

*Ian Millikan,* for respondents Teare.

RINGOLD, J.—This case presents an issue previously unconsidered in the developing law of the right of first refusal in Washington: what the holder of a right of first refusal (right) must do to match a third party property exchange offer. We affirm the trial court's declaratory judgment terminating the defendants' right and hold that an all–cash offer is a substantial variation on a good faith property exchange offer.

Ms. Bertha Thompson died in January 1979, and left the subject property to her longtime tenant, Merle Teare, the third party defendant in this case. In 1969 Thompson sold a portion of the property to Gil and Leonard Emory, who owned a lumber mill adjacent to the Thompson property. In the sales contract Thompson granted to the Emorys a right of first refusal on the property she retained.[1] Teare, needing cash with which to pay the sizable inheritance tax on the property, and seeking an alternate place to live, began to think about selling the property. He first contacted the Emorys, but their initial cash offers did not satisfy him.

Some time later Teare chanced to meet an acquaintance, the plaintiff Richard Matson. Matson, learning of Teare's inheritance and subsequent problems, suggested a property exchange with some cash "to boot" as a possible solution to

---

[1]The contract reads in pertinent part: "It is further understood and agreed that when the remaining property, owned by seller, is sold, purchaser is to have first refusal."

Teare's difficulties. Teare and Matson later viewed some of Matson's properties and Teare selected three which, along with $25,000 in cash, he believed to approximate the value of his own property. He intended to live in one of the houses and rent the other two as a source of income.

Teare gave a copy of Matson's earnest money agreement to the Emorys. The Emorys testified that they were aware of Teare's concerns about a place to live, a source of income, and a way to pay the inheritance tax. The Emorys at different times offered Teare a trailer and a night watchman job, and a house on a 2½–acre lot about a mile from town. The Emorys also testified that they believed that they were only required to make a cash offer to exercise their right.

The Emorys offered Teare $119,000 cash, the estimated value of the Matson properties plus $25,000. When they learned that Teare did not want an all–cash offer because of its adverse tax consequences, they offered to pay an additional amount equal to the negative tax consequences. After several months of dealings, including a heated exchange of words, the Emorys were advised to exercise their right by a specified date or forfeit it. Matson later commenced a declaratory judgment action to declare the right terminated.

THE NATURE OF A RIGHT OF FIRST REFUSAL

A right of first refusal or preemptive right is recognized as a valid contract right governed by contract law. The right has been defined as entitling the owner of the right to the opportunity to buy the subject property on the same terms contained in a bona fide offer from a third party, acceptable to the property owner. *Bennett Veneer Factors, Inc. v. Brewer,* 73 Wn.2d 849, 856, 441 P.2d 128 (1968). The right is a valuable contract right which should not be rendered illusory by imposing requirements that are impossible to meet. *Northwest Television Club, Inc. v. Gross Seattle, Inc.,* 96 Wn.2d 973, 640 P.2d 710 (1981).

The right, however, is not an option, and does not entitle

the holder to set terms and conditions or negotiate the time and place of sale. *Bennett Veneer.* If the right holder wants the privilege of negotiating terms or forcing a sale, those additional rights should be obtained through an option. The right holder is entitled to a fair opportunity to meet the conditions of a third party offer if the property owner decides to sell. If the right holder meets those terms, he or she is entitled to purchase the property.

Principles of contract law applicable to preemptive rights have been summarized by the Supreme Court:

> [A]n acceptance of an offer must always be identical with the terms of the offer, or there is no meeting of the minds and no contract. A purported acceptance that changes the terms of an offer in any material respect may operate as a counteroffer, but it is not an acceptance and does not consummate the contract. Any material variance between offer and acceptance precludes the formation of a contract. If the intended acceptance adds a condition that can be implied in the original offer, then the condition is not a material variance rendering the acceptance ineffective.

(Citations omitted.) *Northwest Television,* at 980, quoting *Northwest Television Club, Inc. v. Gross Seattle, Inc.,* 26 Wn. App. 111, 116–17, 612 P.2d 422 (1980), *aff'd in part, rev'd in part on other grounds,* 96 Wn.2d 973, 640 P.2d 710 (1981).

### COMPARISON OF CASH AND PROPERTY OFFERS

■ Emory's basic contention is that the right of first refusal is effectively exercised by offering cash equal to the value of property offered in an exchange. In relation to all–cash offers this court has stated that conditions imposed by the holder of the right must be virtually identical to the "terms and conditions" imposed by the third party to be an effective exercise of the right. Offers which arguably leave the property owner "as well off" as does the third party offer, but which vary materially from it, render the purported acceptance a counteroffer. *Northwest Television,* 26 Wn. App. at 118.

Exact identity of offers is not required. In *Northwest Television,* the third party offer was conditioned on the sale of the party's residence while the holder of the preemptive right conditioned his offer on the sale of corporate property. The Supreme Court found that this was not a material alteration and cautioned against imposing unrealistic requirements which would render the preemptive right "illusory." *Northwest Television,* 96 Wn.2d at 983. *See also Brownies Creek Collieries, Inc. v. Asher Coal Mining Co.,* 417 S.W.2d 249 (Ky. 1967) (minor variations should be allowed if not a substantial departure from terms of offer).

On its face, an offer of $119,000 varies materially from an offer of two pieces of rental property, a residence, and $25,000. The Emorys argue, however, that the rules for all–cash offers cannot be applied to property exchange/cash offers. Otherwise a property owner could always defeat the preemptive right by requiring a unique chattel or piece of real property. The Emorys assert that requiring an offer of identical property is unrealistic and interpret the requirement of "same terms and conditions" to encompass only value and financing terms, not to require an offer of comparable property. The Emorys contend that an offer leaving the property owner as well off financially adequately meets the terms and conditions of the third party offer.

The Emorys premise their argument on the assumption that preemptive rights necessarily imply or assume cash offers in the future or they become valueless. As the trial court noted, however, the parties could have drafted a provision to cover this specific problem. Allowing a cash offer to be the equivalent of the property exchange offer, regardless of the factual situation, imposes a different contract on the parties and seriously infringes on the owner's right to dispose of the property. There is a middle course. By implying a duty of reasonableness and good faith in property exchange offers we adopt a course which protects the interests of both the property owner and the holder of the right.

DUTY OF GOOD FAITH

The Utah Supreme Court dealt with a similar problem in two factually similar cases, *Weber Meadow–View Corp. v. Wilde,* 575 P.2d 1053 (Utah 1978) and *Prince v. Elm Inv. Co.,* 649 P.2d 820 (Utah 1982). In *Weber Meadow–View* the court held that an offer of cash plus the residence of the property owner's choice up to a $50,000 value did not substantially match a third party offer of a particular residence valued at $48,000 plus an equal amount of cash. In the absence of bad faith the decision "as to both the time and the terms upon which the optionor would sell her property remains her exclusive prerogative so long as she acts in good faith . . .". *Weber Meadow–View,* at 1055. The good faith requirement was clarified in *Prince v. Elm Inv. Co.*:

> [O]nce the promisee of a right of first refusal has challenged the seller's decision as arbitrary or lacking in good faith, the seller must articulate a "reasonable justification" for his actions. Merely asserting the uniqueness of the third party's offer is not a sufficient explanation since, except where both offers are for immediate payment in cash, no two offers are ever identical. A ruling that a property owner could establish a reasonable basis for accepting the third party's offer merely by asserting that it was unique or distinguishable would render illusory the good–faith requirement imposed in *Weber Meadow–View* . . .

*Prince,* at 825. The court further noted that intent to use the house as a personal residence is probably a sufficient justification while intent to use it as rental property would require an explanation in commercial terms to meet the reasonableness standard.

The Utah approach strikes a balance between the conflicting interests, preserving the value of a preemptive right while allowing the property owner to dispose of the property as desired. Implying a standard of reasonable conduct is in accord with general contract law, which imposes a duty of reasonableness and good faith when one party must perform to the satisfaction of the other party. *E.g., Lonsdale v. Chesterfield,* 99 Wn.2d 353, 357, 662 P.2d 385 (1983); *Mil-*

*ler v. Othello Packers, Inc.,* 67 Wn.2d 842, 844, 410 P.2d 33 (1966) (implied covenant of good faith and fair dealing). Teare's conduct satisfies a reasonableness standard, based on the trial court's findings of fact. He sought a home, plus some source of income and a way to pay the inheritance tax. The trial court found that the Emorys made a cash offer and made no effort to offer comparable property. Emorys assigned error to this finding of fact, but it is supported by substantial evidence in the record. Factual determinations will not be disturbed on appeal when, as here, they are supported by substantial evidence. *See Peeples v. Port of Bellingham,* 93 Wn.2d 766, 771, 613 P.2d 1128 (1980); *Glover v. Tacoma Gen. Hosp.,* 98 Wn.2d 708, 718, 658 P.2d 1230 (1983).

Allowing an all–cash offer to meet the terms and conditions of a property exchange offer would force Teare to dispose of his property in a manner unacceptable to him. Absent findings of bad faith or unreasonableness, the property owner should retain primary control over disposition of the property. Because the Emorys' offer varied materially from Matson's offer, it was a counteroffer, not an acceptance. The right of first refusal was correctly terminated.

### DUTIES OF THE PROPERTY OWNER
### TOWARD THE RIGHT HOLDER

The Emorys pose an alternate argument. Assuming that the cash offer did not effectively exercise the right, they argue that they are entitled to additional time to attempt to meet the offer because of Teare's bad faith and failure to assist them in meeting the Matson offer. The argument is not persuasive because it presupposes Teare's bad faith. While the trial court did not make a specific finding of "good faith," it was incumbent on the Emorys—not Matson—to establish bad faith. From the trial court's rejection of the proposed finding of bad faith, coupled with the findings made in favor of Matson, we consider the findings to be against the Emorys' contention of bad faith. *McCutcheon v. Brownfield,* 2 Wn. App. 348, 467 P.2d 868

(1970). Absent bad faith there is no basis for estoppel or for the Emorys' argument that they are entitled to additional time to meet the Matson offer.

The property owner is required to notify the holder of a preemptive right to enable the holder to meet the terms and conditions of the offer. *Bennett Veneer Factors, Inc. v. Brewer, supra.* In the cases cited by the Emorys there was a lack of *any* notice of the sale, leading the court to fix a fair price either as damages or as a purchase price for specific performance, *see, e.g., Maron v. Howard,* 258 Cal. App. 2d 473, 66 Cal. Rptr. 70, 72 (1968). Here, Teare gave the Emorys a copy of the earnest money agreement so they had notice of the terms of the exchange. They testified that they knew of Teare's concerns about a residence and some income. There is no other duty within the context of reasonableness required of Teare. The Emorys had adequate notice and an opportunity to exercise their right. The declaratory judgment properly terminated the Emorys' preemptive right.

Judgment affirmed.

CORBETT, A.C.J., and WILLIAMS, J., concur.