[No. B084825. Second Dist., Div. One. May 30, 1996.]

ARDEN GROUP, INC., Plaintiff, Cross-defendant and Respondent, v. JACK D. BURK et al., Defendants, Cross-complainants and Appellants; CAROLINE C. FABBRO, Defendant, Cross-defendant and Respondent.

COUNSEL

Suuzen Ty Anderson, Freeman & Freeman and Lawrence P. Freeman for Defendants, Cross-complainants and Appellants.

Sanders, Barnet, Goldman, Simons & Mosk, Bernard P. Simons and Richard M. Mosk for Plaintiff, Cross-defendant and Respondent and for Defendant, Cross-defendant and Respondent.

OPINION

**VOGEL (Miriam A.), J.**—The trial court confused a tenant's right of first refusal to purchase leased property with an option agreement and, based upon the wrong law, rendered judgment against the tenant and in favor of the party whose offer to purchase the leased property triggered the tenant's exercise of the right of first refusal. We reverse.[1]

### FACTS

In 1973, Jack and Wanda Burk purchased an existing gas station (including three underground tanks) from Shell Oil Company and, at about the same time, leased from Caroline Fabbro the real property on which the station was located. Fabbro gave the Burks the right to extend the lease at five-year intervals for twenty years and the right of first refusal if Fabbro decided to

---

[1]On February 15, 1996, appellants Jack and Wanda Burk filed a motion for preference, asking us to expedite their appeal because another related case was set for trial in June 1996. We granted the motion, thereby moving the Burks' appeal to the head of the line. We notified all parties that oral argument was scheduled for May 28 and set about our review of the briefs, record and applicable law. On May 24, the last court day before oral argument, the Burks filed a motion to dismiss this case because it has settled (although there is no stipulated dismissal). (See *Neary* v. *Regents of University of California* (1992) 3 Cal.4th 273 [10 Cal.Rptr.2d 859, 834 P.2d 119].) No explanation was offered for the delay (there is nothing to explain why we were not advised earlier that settlement discussions were underway), and no apology was made for unnecessarily bumping other cases or for wasting our limited resources on this case. Under these circumstances, the motion to dismiss is (and others like it in the future will be) denied. (Cf. *Lara* v. *Cadag* (1993) 13 Cal.App.4th 1061, 1065-1066 [16 Cal.Rptr.2d 811]; see also Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 1995) §§ 5:63 – 5:64.1, pp. 5-16 – 5-18 [dismissal is not automatic and parties should strive to reach a settlement as early as possible in the appeal process or should at least notify the appellate court that settlement efforts are pending, "thus giving the court the option to put the appeal 'on the back burner' for a while *before* it invests substantial time in reviewing the merits"].)

sell the property.[2] The Burks installed two more tanks, extended the lease at the end of each five-year period and, as contemplated by the parties, continued their tenancy and continued to operate a gas station on the property.

In July 1992, Arden Group, Inc. (the owner of the Mayfair and Gelsons grocery store chains) became interested in Fabbro's property for use as a parking lot next to a Mayfair store. Following a period of negotiations, Arden made a formal offer to Fabbro and, subject to the Burks' right of first refusal, Fabbro accepted. Since the property had been used for a gas station for about 50 years (first by Shell, then by the Burks), Arden and Fabbro were concerned about soil contamination. Among other terms, therefore, the agreement between Fabbro and Arden provided (1) that escrow would not close until the property was "free of any gas tanks, real property improvements and any contamination of hazardous waste or toxic" substances; (2) that Fabbro was responsible for removing all improvements (including the gas tanks) and cleaning up the contamination, with the understanding (between Arden and Fabbro) that Fabbro would "look to [the Burks] to remove [the] tanks" and to clean up any contamination; (3) that Fabbro would remain liable for the clean-up of any contamination discovered after the sale was completed; and (4) that access to the property for testing was subject to the Burks' rights under their lease.

Fabbro gave the Burks the notice required by the lease and the Burks timely responded with a "Notice of Exercise of Option to Purchase Real Property (Right of First Refusal)" in which they stated they were "exercis-[ing] their right of first refusal to purchase the . . . property" on "the terms as set forth in the . . . agreement" between Fabbro and Arden. In an accompanying cover letter to Fabbro's lawyer, the Burks' attorney added: "The exercise is subject to the terms of the Arden offer *except of course [Fabbro's] liability for contamination should be rewritten to extend only to contamination traceable to the period prior to November 16, 1972.* Since that time [the Burks] have been the operator[s] and owner[s] and are accordingly

---

[2]This was what the lease provided: "Purchase Refusal. If [at any] time during the primary term, any extension period or any tenancy after either, Lessor receives from a ready, willing, and able purchaser an acceptable bona fide offer to purchase, or makes a bona fide offer to sell to such a purchaser, the premises or any part thereof or any property which includes all or part of the premises, Lessor shall give Lessee notice, specifying the name and address of the purchaser and the price and terms of the offer, accompanied by Lessor's affidavit that the proposed sale is in good faith. Lessee shall thereupon have, in addition and without prejudice to its rights under [a separate provision to extend the lease], the prior option to purchase the demised premises or the part thereof or the entire property covered by such offer, at the price and on the terms of the offer. Lessee's failure at any time to exercise its option under this paragraph shall not affect this Lease or the continuance of Lessee's rights and options under this paragraph or any other paragraph hereof."

liable for any contamination excepting contamination if any from tanks on the premises at the commenc[e]ment of their occupancy and never used by them. In this regard our tanks have recently been tested and are tight . . . . [¶] *Nothing herein should be construed as a counter proposal, and be advised that the Burk[s] are exercising their right of first refusal on the terms of the Arden offer.* The content of this letter is solely for the purposes of interpreting certain matters as well as developing a plan to consummate the transaction." (Italics added.)

Fabbro notified the Burks that she considered their notice to be an "unconditional exercise" of their right of first refusal to purchase the property, and she notified Arden that the Burks had exercised their right to buy the property. As required by Fabbro's agreement with Arden, the Burks then deposited $32,500 into an escrow (the purchase price was $325,000).[3] At the same time, Fabbro and the Burks entered a "Modification of Contract," pursuant to which Fabbro agreed to sell the property to the Burks on the same terms as Fabbro's agreement with Arden except as therein modified. These modifications included the obvious (changing the buyer's name from Arden to Burk) and the almost equally obvious (changing the terms to acknowledge the Burks' prior and continuing use of the property as a gas station).

These are the differences between Arden's agreement and the Modification: Under the Burks' modification, the gas tanks were not to be removed and, therefore, (1) Fabbro was not responsible for removing the tanks and (2) escrow *could* close without their removal. The Burks were responsible for any contamination caused by their tenancy and Fabbro was liable (to the extent provided by law) for any contamination caused by the use of the property prior to November 1972. As a result, (3) Fabbro had no one to be responsible to for any contamination discovered after the sale was completed and, since the Burks were the buyers, (4) no soil testing was required.[4]

Although the Burks and Fabbro were content, Arden was not, and Arden sued the Burks and Fabbro for declaratory relief, claiming the Burks had not

---

[3]This appears to have been the fair market value of the property. Earlier negotiations between the Burks and Fabbro were in the neighborhood of $250,000 to $400,000.

[4]According to Arden, these changes represent an attempt by the Burks and Fabbro to hide (from whom we do not know) the existence of soil contamination. *Nothing* in the record supports even an inference of impropriety. Whatever legal liability Fabbro and the Burks have to the several governmental agencies interested in the storage of hazardous wastes is clearly unaffected by *either* the agreement between Arden and Fabbro or the modification of that agreement entered by the Burks and Fabbro. Aside from the fact that no one had determined that the property was contaminated or that the tanks had to be removed (existing laws give the Burks until 1998 to replace the old tanks), the most that can be said about the parties' private agreements is that Arden's purchase would have required Fabbro to indemnify Arden in the event a subsequent clean-up is required. Under the Burks' modification, the only difference is that Arden is out of the picture. Accordingly, Arden's suggestion that the Burks "sought to

properly exercised their right of first refusal because they did not "meet each of the covenants set forth in [Arden's] offer." It followed, according to Arden, that it had the right to purchase the property.[5] At a bench trial, Arden persuaded the court that Fabbro was legally obligated to sell to Arden because the Burks' offer did not "match [the] essential terms" of the Arden offer which "required that *at the close of escrow* the Property would be *tested for contamination* and would be free from any contamination." The Burks appeal from the judgment thereafter entered.

## DISCUSSION

■ The Burks contend they unconditionally exercised their right of first refusal and that they were entitled to judgment in this action. We agree.

Resolution of this case begins and ends with an understanding of the difference between an option agreement and a right of first refusal. An option is an agreement to keep a specific offer open for a specified period, and disputes about whether the option has been validly exercised are decided by reference to the rules of offer and acceptance—which means the terms of the exercise must ordinarily be identical to terms of the offer. (*Landberg* v. *Landberg* (1972) 24 Cal.App.3d 742, 751-752 [101 Cal.Rptr. 335]; *C. Robert Nattress & Associates* v. *CIDCO* (1986) 184 Cal.App.3d 55, 66-67 [229 Cal.Rptr. 33].) But no such matching is required for the exercise of a right of first refusal. Although it "becomes an option of sorts after a bona fide offer to purchase has been made to the owner by a third person" (184 Cal.App.3d at p. 66), a right of first refusal may be exercised without a literal matching of terms. Because the party exercising a right of first refusal is stepping into a contract made by a third party, the court must consider commercial

conceal their pollution of the [p]roperty" and to require Fabbro to "be an accomplice" is pure sophistry. The condition of the property is what it is, and the testing requirement was eliminated simply because the purchaser had been occupying the property for 20 years and would thus be liable for any contamination that occurred during that time.

[5]Arden also sued Fabbro and Fabbro's realtor for negligent misrepresentation, and the Burks and Fabbro cross-complained against each other and against Arden. Arden, Fabbro and the realtor settled their claims among themselves and, as part of that agreement, Fabbro stipulated to the entry of a judgment in favor of Arden in its declaratory relief action provided the court ruled in Arden's favor. According to that same settlement (the terms of which were not disclosed to the Burks until the time of trial), Fabbro was represented at the trial of this action by Arden's attorney, at Arden's expense, and Arden also agreed to pay Fabbro's costs if it later became necessary for Fabbro to sue the Burks over clean-up problems. Although the record is not entirely clear, it appears that Fabbro voluntarily dismissed the declaratory relief claims she had asserted against the Burks in this action, and instead filed a separate action in which she sought to allocate clean-up liability, Caroline C. Fabbro v. Jack D. and Wanda L. Burk (Super. Ct. Los Angeles County, No. BC135995). The other case was apparently set for trial sometime in the next few weeks but now appears to have been settled along with this case. (See fn. 1, *ante.*)

realities and allow modifications consistent with the intent of the parties whose contract created the right of first refusal. (*Id.* at p. 72; *Mitchell* v. *Exhibition Foods, Inc.* (1986) 184 Cal.App.3d 1033, 1046 [229 Cal.Rptr. 535].)

The facts of this case illustrate the problem with the trial court's approach to this issue.[6] Here, the *only* differences in the two deals are those made necessary by the fact that the Burks are buying as tenants in possession who will continue to use the property in the same manner it has been used for more than 50 years. The removal of the tanks, the clean-up arrangements, the testing for contamination, and Fabbro's continuing clean-up responsibility became non-issues when the Burks became the buyers, and the modification of the deal simply acknowledged that fact, no more and no less. Indeed, to carry Arden's position to its logical conclusion would preclude the substitution of the Burks as buyers because, under the terms of Arden's offer, Arden must be the named buyer. We reject that notion as absurd, and we reject as self-serving nonsense Arden's suggestion that its proposal was "better" because it has an element of social utility by requiring the immediate clean-up of the property. There is absolutely nothing illegal, unlawful or immoral about the Burks' exercise of a right they bargained and paid for, and the fact that they will not be replacing the existing tanks until they are required by law to do so in 1998 has nothing to do with the price of tomatoes. It follows that the Burks were entitled to judgment in their favor.

There is one final point. The trial court required the Burks to pay Arden's attorney's fees. Although the Burks contend on this appeal that fees are not recoverable between these parties because they have no direct contractual relationship, Arden has persuaded us otherwise. (Civ. Code, § 1717, subd. (a); *Real Property Services Corp.* v. *City of Pasadena* (1994) 25 Cal.App.4th 375, 383-384 [30 Cal.Rptr.2d 536]; *Mitchell* v. *Exhibition Foods, Inc., supra,* 184 Cal.App.3d at p. 1048.) And, of course, by maintaining its position here without regard to the outcome of the Burks' appeal, Arden has certainly waived any right it might have had to suggest otherwise. Since we reverse the judgment, we obviously reverse the award of fees payable to Arden, but we will remand with directions to the trial court to determine the amount of fees payable by Arden to the Burks.

---

[6]We are at a loss to understand how Arden was able to persuade the trial court to ignore existing California law and to adopt instead a contrary rule followed in two other states. (See *Coastal Bay Golf Club, Inc.* v. *Holbein* (Fla.Dist.Ct.App. 1970) 231 So.2d 854; *Matson* v. *Emory* (1984) 36 Wn.App. 681 [676 P.2d 1029].) Leaving to one side the fact that we do not think even the Florida or Washington courts would apply the rule adopted by the trial court to the facts of this case, the important thing is that the trial court was required to follow California law. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

## DISPOSITION

The judgment and the order awarding attorney's fees are reversed, and the matter is remanded to the trial court with directions to enter a new judgment in favor of the Burks, either (1) by ordering the sale of the property to the Burks and awarding such damages as may be necessary and appropriate to restore the Burks to the position they would have been in had the judgment properly been entered in their favor in the first instance or (2) if sale has been made impossible or impractical by reason of Arden's enforcement of the judgment pending this appeal, by awarding damages in the amount necessary and appropriate to restore the Burks to the position they were in prior to the enforcement of the judgment. (Code Civ. Proc., § 908.) The trial court is directed to determine the amount of attorney's fees and costs payable by Arden to the Burks as the prevailing parties and to enter an order in that amount. The Burks are awarded their costs of appeal.

Ortega, Acting P. J., and Masterson, J., concurred.