[Cite as *Gordon Restaurants, Inc. v. W.S. Carlile & Sons Co.*, 2022-Ohio-4589.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Gordon Restaurants, Inc., | : | |
| Plaintiff-Appellee, | : | |
| v. | : | No. 21AP-550<br>(C.P.C. No. 20CV-6487) |
| The W.S. Carlile &<br>Sons Co. et al., | : | |
| | : | (REGULAR CALENDAR) |
| Defendants-Appellants. | : | |
| | : | |
| Deborah K. Quirk, Executor of the<br>Estate of William C. Donges et al., | : | |
| Plaintiffs-Appellants, | : | No. 21AP-551<br>(C.P.C. No. 20CV-6493) |
| v. | : | |
| | : | (REGULAR CALENDAR) |
| Gordon Restaurants, Inc., | : | |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on December 20, 2022

**On brief:** *Chaney & Drexel, LLC*, *John L. Chaney*, and *Ray P. Drexel*, for appellee. **Argued:** *John L. Chaney*.

**On brief:** *Brouse McDowell, LPA*, *Christopher F. Swing*, and *David Sporar*, for appellants Deborah K. Quirk, Executor of the Estate of William C. Donges; Martha E. Donges; and The W.S. Carlile & Sons Company. **Argued:** *Christopher F. Swing*.

**On brief:** *Sikora Law LLC*, *Michael J. Sikora III*, and *George H. Carr*, for appellant Pizzuti/TMD, LLC. **Argued:** *Michael J. Sikora III*.

APPEALS from the Franklin County Court of Common Pleas

KLATT, J.

{¶ 1} Defendants-appellants, The W.S. Carlile & Sons Company, Pizzuti/TMD, LLC, Martha E. Donges, and Deborah K. Quirk, appeal a judgment of the Franklin County Court of Common Pleas in favor of plaintiff-appellee, Gordon Restaurants, Inc. For the following reasons, we reverse that judgment and remand this case.

{¶ 2} Gordon operates a tavern known as the "Char Bar" on the first floor of a building located at 439 North High Street in Columbus, Ohio. Gordon leases that space from Martha Donges and the estate of William Donges. Immediately next to the Char Bar is a smaller building, located at 443 North High Street, known as the "Annex." Gordon leases that building from Carlile. William Donges was the sole owner of Carlile until his death in 2018. After William Donges' death, Quirk was appointed as administrator of William Donges' estate and became president of Carlile.

{¶ 3} In February 2019, Martha Donges and Quirk hired Kohr Royer Griffith ("KRG") to appraise, advertise, and sell both the Char Bar and Annex properties. William A. Werth appraised both properties as of the date of William Donges' death, November 24, 2018. Werth concluded that the market value of the two properties without leases was $2,015,000, but the existence of the leases on the properties lowered the value of the properties to $1,000,000. Werth opined that the highest and best use of the properties was redevelopment of the sites with a mixed-use development. According to Werth,

> [d]ue to the smaller site sizes of the parcels[,] a developer would assemble the [two] parcels to provide a suitable building site. Individually, the 5,011 and 3,150 square foot lots would not provide a site that would be feasible for redevelopment. The building footprints for the sites would make the cost to develop the buildings prohibitive. Individually they do not provide enough width to build a building to today's market requirements. It is my opinion to a reasonable degree of certainty that selling the buildings/sites together would result in a higher value than if sold individually and it is therefore in the owner's best interest to sell the buildings/sites together.

(Ex. 23, June 11, 2021 letter at 2.)

{¶ 4} Per Werth's advice, KRG listed and marketed the Char Bar and Annex properties together. Little serious interest arose, likely due to the leases encumbering the properties. KRG had not received any viable offers on the properties when Pizzuti offered $1.3 million in June 2020.

{¶ 5} The sellers, however, had a hurdle to clear before they could accept Pizzuti's offer.[1] The Char Bar and Annex leases each contained an identically worded provision providing a right of first refusal to Gordon. Thus, Gordon had a "right to purchase the demised premises at the same price and upon the same terms and conditions as those offered by any prospective purchaser tendering a bona fide offer to Lessor, which offer Lessor intends to accept." (Ex. 1 at ¶ 26; Ex. 4 at ¶ 27.) Before accepting an offer to purchase the demised premises, the sellers had to notify Gordon in writing of the terms and conditions of the offer. Gordon then had 15 days in which to decide whether to exercise its rights of first refusal.

{¶ 6} The sellers forwarded to Gordon the proposed real estate purchase contract for the $1.3 million sale of the two properties. At that point, Gordon protested that the sellers had to tender a purchase contract for each property because Gordon had a separate right of refusal for each property.

{¶ 7} After Pizzuti and the sellers discussed Gordon's demand, Pizzuti terminated the $1.3 million offer. In its place, Pizzuti submitted two offers: a $1.2 million offer for the Char Bar property and a $100,000 offer for the Annex property. Pizzuti, however, tied the two offers together through terms included in the respective proposed real estate purchase contracts. The proposed real estate purchase contract for the Char Bar property contained a term making sale of that property contingent upon the buyer entering into a contract to purchase the Annex property and the simultaneous closing of the purchases of both the Char Bar property and Annex property. The proposed real estate contract for the Annex property contained a term making sale of that property contingent upon the buyer entering into a contract to purchase the Char Bar property and the simultaneous closing of the purchases of both the Char Bar property and the Annex property.

---

[1] Throughout this decision, we will refer to Martha Donges, the estate of William Donges, and Carlile as "the sellers."

{¶ 8} On August 26, 2020, the sellers provided Gordon with the proposed real estate purchase contracts for both the Char Bar and Annex properties. In a letter dated September 9, 2020, Gordon informed the sellers that it was exercising its right of first refusal to purchase the Annex property only. The sellers rejected Gordon's exercise of the right of first refusal as ineffective because Gordon did not match the same terms and conditions as those offered by Pizzuti for the purchase of the Annex property. Gordon's purported acceptance omitted the term conditioning the sale of the Annex property on the simultaneous purchase of the Char Bar property, which was material to the sellers' decision to accept Pizzuti's offer.

{¶ 9} On October 2, 2020, Gordon filed suit against the sellers and Pizzuti for breach of contract and declaratory judgment. Gordon alleged that Carlile breached the Annex lease "by bundling together separate properties in an effort to defeat [Gordon's] right of first refusal to purchase only the Annex and by seeking to sell the Annex to a third-party in breach of its obligation to sell the Annex to [Gordon]." (Compl. at ¶ 30.) Gordon asked the trial court to declare that Gordon properly exercised its right of first refusal to purchase the Annex property. Additionally, Gordon sought monetary damages and injunctive relief, as well as a court order requiring the sellers to specifically perform by conveying a deed for the Annex property to Gordon in exchange for the $100,000 purchase price.

{¶ 10} Also on October 2, 2020, the sellers and Pizzuti sued Gordon. In their complaint, the sellers and Pizzuti asked the trial court to issue a declaratory judgment that Gordon did not effectively exercise its right of first refusal to purchase the Annex property, and that the sellers could proceed with the sale of the Annex and Char Bar properties to Pizzuti free and clear of any rights and/or interests of Gordon.

{¶ 11} The trial court consolidated the two cases. The trial court then held a bench trial at which the parties presented the evidence set forth above.

{¶ 12} On September 27, 2021, the trial court issued an opinion and a declaratory judgment entry. In the declaratory judgment entry, the trial court declared that Gordon "is legally entitled to exercise the right of first refusal only for the 'Annex' property at 443 North High Street without also buying the 'Char Bar' property at 437-39 North High Street. The W.S. Carlile & Sons Co., Deborah Quirk, Executor, and Martha Donges are not legally

entitled to 'bundle' these properties and insist that [Gordon] simultaneously purchase both." (Sept. 27, 2021 Declaratory Jgmt. Entry.)[2]

{¶ 13} The sellers now appeal the September 27, 2021 judgment, and they assign the following errors:

> [1.] The Trial Court erred in entering declaratory judgment that "The W.S. Carlile & Sons Co., Deborah Quirk, Executor, and Martha Donges are not legally entitled to 'bundle' [the 'Annex' and 'Char Bar'] properties and insist that [Gordon] simultaneously purchase both."
>
> [2.] The Trial Court erred in entering declaratory judgment that "Gordon Restaurants, Inc. is legally entitled to exercise the right of first refusal only for the 'Annex' property * * * without also buying the 'Char Bar' property."
>
> [3.] The Trial Court erred in declining to grant declaratory judgment in favor of Sellers and Pizzuti and against [Gordon].
>
> [4.] The Trial Court erred in declining to enter judgment in favor of Sellers and Pizzuti and against [Gordon] on all remaining claims.

{¶ 14} Pizzuti also appeals the September 27, 2021 judgment, and it assigns the following errors:

> I.  The Trial Court erred by applying an incorrect legal standard to determine the parties' rights.
>
> II.  The Trial Court erred by declaring the sale of a single parcel to [Gordon] may proceed when that parcel was never sought to be sold on its own.

{¶ 15} We will address the sellers' first and second assignments of error together with Pizzuti's assignments of error because they are interrelated. By these assignments of error, appellants argue that the trial court erred in interpreting the right-of-first-refusal provision contained in the Annex lease.

{¶ 16} The interpretation of a written contract is a matter of law that a court reviews de novo. *Saunders v. Mortensen*, 101 Ohio St.3d 86, 2004-Ohio-24, ¶ 9. When confronted

---

[2] Although this judgment only resolved one claim, the trial court added to its judgment Civ.R. 54(B) language because it found that it had reached a "key determination," which was "perhaps [ ] case dispositive," warranting immediate appeal. (Sept. 27, 2021 Opinion at 10.)

with a question of contractual interpretation, a court's principal objective is to ascertain and give effect to the intent of the parties. *Hamilton Ins. Servs., Inc. v. Nationwide Ins. Cos.*, 86 Ohio St.3d 270, 273 (1999). "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130 (1987), paragraph one of the syllabus. When that language is clear, a court may look no further than the writing itself to find the intent of the parties. *Sunoco, Inc. (R&M) v. Toledo Edison Co.*, 129 Ohio St.3d 397, 2011-Ohio-2720, ¶ 37.

{¶ 17} A right of first refusal "is a promise to present offers to buy property made by third parties to the promisee in order to afford the promisee an opportunity to match the offer." *Latina v. Woodpath Dev. Co.*, 57 Ohio St.3d 212, 212 (1991). Here, the right of first refusal in the Annex lease provided:

> Lessor hereby grants to Lessee the Right of First Refusal to purchase the demised premises, provided this Lease Agreement has not been terminated as provided herein or otherwise, and provided Lessee is not in default in the payment of rent or other charges, or in the performance of and compliance with all other covenants, terms and conditions of this Lease Agreement. Lessee's said Right of First Refusal shall be a right to purchase the demised premises at the same price and upon the same terms and conditions as those offered by any prospective purchaser tendering a bona fide offer to Lessor, which offer Lessor intends to accept. Prior to the acceptance of any such bona fide offer, Lessor shall notify Lessee in writing and shall set forth all of the terms and conditions of such offer. Lessee shall have a period of fifteen (15) days after receipt thereof to notify Lessor of Lessee's intent to exercise the right granted hereunder. In the event that Lessee exercises Lessee's said Right of First Refusal, the purchaser [sic] of the property shall be closed within thirty (30) days after Lessee delivers written notice to Lessor of Lessee's intent to exercise the right to purchase the demised premises.

(Ex. 1 at ¶ 26.)

{¶ 18} The operative sentence of this provision defines the right of first refusal as "a right to purchase the demised premises at the same price and upon the same terms and conditions as those offered by any prospective purchaser tendering a bona fide offer to Lessor, which offer Lessor intends to accept." *Id.* Thus, the Annex lease adopts the prototypical formulation of a right of first refusal, granting Gordon a contractual right to

preempt a sale of property upon the occurrence of an agreed condition precedent.  Namely, if the property owner decides to accept a bona fide offer to purchase the leased property, the right of first refusal is triggered and the owner must notify the right-holder of the offer. Only then can the holder of the right decide whether or not to purchase the property on the same terms and conditions that the owner is willing to accept from the third-party purchaser.  3 Perillo, *Corbin on Contracts*, Section 11.3, at 470 (Rev.Ed.1996); *accord Latina* at 212.

{¶ 19}  Here, Gordon argues that a property owner cannot bundle real estate subject to a right of first refusal with additional real estate.  According to Gordon, Carlile impermissibly bundled the Annex property, which was subject to the right of first refusal contained in the Annex lease, with the Char Bar property, which was not subject to the right of first refusal contained in the Annex lease.  Gordon contends that Carlile breached the Annex lease when it presented to Gordon an offer that bundled additional real estate.

{¶ 20}  Only two Ohio cases address the problem posed by the sale of a package of properties, only a portion of which is burdened by a right of first refusal.  In the first, *Janas v. Simmons*, 6th Dist. No. WD-86-60 (Apr. 17, 1987), the seller conveyed parts of three different lots to three different sets of purchasers.  Each of the deeds of the partial lots granted the purchasers rights of first refusal on the remainder of the lots if the lots were sold after the seller's death.  When the seller died, a third party submitted an offer for all of three partial lots subject to the rights of first refusal and two additional partial lots owned by the seller's estate.  Although the three purchasers received notice of a pending sale, "[t]he price offered for the individual lots in question was at no time disclosed to [the purchasers] so that they might have an opportunity to purchase at that price * * *."  The estate's administrator invited the three purchasers to make offers for the partial lots, but he rejected those offers in favor of accepting the third party's offer.  The purchasers then filed suit against the new property owner and the estate administrator.

{¶ 21} In short, both the trial court and appellate court found in favor of the purchasers.  With regard to the right of first refusal, the Sixth District Court of Appeals stated:

> The right has been defined as entitling the owner of the right to
> the opportunity to buy the subject property on the same terms

> contained in a bona fide offer from a third party, acceptable to the property owner.
>
> The right, however, is not an option, and does not entitle the holder to set terms and conditions or negotiate the time and place of sale. * * * The right holder is entitled to a fair opportunity to meet the conditions of a third party offer if the property owner decides to sell. If the right holder meets those terms, he or she is entitled to purchase the property.

*Id.*, quoting *Matson v. Emory*, 36 Wash.App. 681, 683-84 (1984).

{¶ 22} The court then specifically addressed "where a smaller piece of land on which one party has a right of first refusal is sold to another party as part of the sale of a larger piece." *Id.* The court concluded that, in such a situation, "the grantor * * * has demonstrated his intention to sell the smaller tract by including it in the sale of the larger tract, thereby triggering the preemptive right." *Id.* In other words, the sale of property burdened by a right of first refusal in a package deal triggered the right of first refusal.

{¶ 23} Consequently, in *Janas*, the estate administrator had to notify the purchasers, who all held rights of first refusal, of the third-party offer he intended to accept so the purchasers could decide whether they wanted to meet the terms and conditions of the offer and purchase the partial lots. By not providing the purchasers with the terms and conditions of the third-party offer, the estate administrator breached the purchasers' rights of first refusal. Due to that breach, the court held that the purchasers were entitled to specific performance on their partial lots.

{¶ 24} In the second case, *Wehagen, Inc. v. U.S.A. Mgt. & Dev. Co.*, 11th Dist. No. 89-L-14-050 (July 13, 1990), the plaintiff leased a gas station from the property owner, and the lease granted the plaintiff a right of first refusal on the leased premises. The property owner decided to accept an offer to purchase the gas station and an adjacent medical building for $1.36 million, and so informed the plaintiff. In response, the plaintiff requested that the property owner segregate the properties and separately price the gas station to allow it to exercise its right of first refusal. The property owner denied this request, and ultimately sold the medical building to one purchaser for $1.3 million and the gas station to another purchaser for $60,000. The property owner never informed the plaintiff of the separate offer for the gas station. After the sale, the plaintiff filed suit against the purchasers, who in turn, filed a cross-claim against the former property owner.

{¶ 25} The trial court concluded that the former property owner and the purchasers engaged in unconscionable conduct constituting constructive fraud. That unconscionable conduct included the former property owner's refusal to segregate the gas station property in the transaction to allow the exercise of the right of first refusal as to that property alone. The court held that:

> [The plaintiff] was not obligated to meet a *bona fide* purchase offer just because it included the [gas station] parcel. * * * Once [the property owner] decided to sell the [gas station] parcel, it was bound under [the plaintiff's] first refusal right to ascertain a *bona fide* segregated sale price for presentment [to the plaintiff].

(Emphasis sic.) *Id.* The appellate court agreed with the trial court's reasoning and affirmed the trial court's judgment.

{¶ 26} Gordon directs us to two additional Ohio cases, but we do not find either case qualifies as precedent creating Ohio law regarding how package deals affect rights of first refusal. In the first, *Natl. City Bank v. Welch*, 188 Ohio App.3d 641, 2010-Ohio-2981 (10th Dist.), we addressed a different issue, and in doing so, we cited a North Dakota Supreme Court case. Gordon now relies on a separate and unrelated holding in that North Dakota case to argue that a seller cannot bundle property subject to a right of first refusal with other property. However, when finding the North Dakota case persuasive in deciding *Welch*, we did not adopt that case wholesale. The second case, *Grupo Condumex S.A. de C.V. v. SPX Corp.*, 227 F.Supp.2d 755 (N.D.Ohio 2002), applies Delaware law and, in any event, contains no analysis of the issue now before this court.

{¶ 27} Drawing on the two applicable Ohio cases, we conclude that the right of first refusal is triggered when a property owner intends to accept a bona fide offer for a package of properties that includes property burdened by a right of first refusal. A sale of the packaged properties without honoring the right of first refusal over the burdened property constitutes a breach of contract. To honor the right of first refusal, the property owner and purchaser must agree on a separate price for the burdened property, and the property owner must submit to the right-holder a separate offer, which it intends to accept, for the

burdened property. The right-holder will then have the opportunity to meet the terms and conditions of that separate offer.[3]

**{¶ 28}** Applying that law to this case, we conclude that the sellers fulfilled the law's requirements. Although the sellers initially forwarded to Gordon a single offer for both the Annex and Char Bar properties, the sellers and Pizzuti negotiated separate real estate purchase contracts for each of the properties at Gordon's request. The sellers then submitted the separate proposed real estate purchase contracts, with separate price terms, to Gordon and gave Gordon an opportunity to match those offers. The sellers, therefore, did not breach their obligations under the Annex lease agreement.

**{¶ 29}** The problem presented here arises because the proposed real estate purchase contract for the Annex property contained a term that stated, "[t]he obligations of each of Buyer and Seller hereunder are contingent upon (a) Buyer entering into a contract to purchase [the Char Bar property] and (b) the simultaneous closing of the purchases of both of the [Annex property] and the [Char Bar property]." (Ex. 10 at ¶ 17.) Gordon would have us simply excise this term from the offer. However, under the plain language of the right of first refusal, Gordon can only purchase the Annex property "upon the same terms and conditions as those offered by any prospective purchaser." (Ex. 1 at ¶ 26.) It is the duty of a court to give effect to the words used in a contract, not ignore the existence of the contract's words or phrases. *Cleveland Elec. Illuminating Co. v. Cleveland*, 37 Ohio St.3d 50, 53 (1988), paragraph three of the syllabus; *Eckel v Bowling Green State Univ.*, 10th Dist. No. 11AP-781, 2012-Ohio-3164, ¶ 23. Consequently, we must apply—not ignore—that language.

---

[3] In this holding, our court is generally consistent with the most recent precedent from other states. *See e.g., Country Visions Coop. v. Archer-Daniels-Midland Co.*, 396 Wis.2d 470, 2021 WI 35, ¶ 28 (holding that "the sale of a property that is subject to a right of first refusal as part of a package deal triggers the right of first refusal" and a package deal must be broken up to "allow a right of first refusal holder to exercise that right on only the burdened property"); *Kutkowski v. Princeville Golf Course, LLC*, 129 Haw. 350, 357 (2013) (adopting the rule that the sale of a larger parcel to a third party manifests the seller's intent to sell the smaller parcel as well, which triggers the right of first refusal); *Field v. Costa*, 184 Vt. 230, 2008 VT 75, ¶ 22 (holding that "a 'package deal' including both encumbered and unencumbered property triggered the [right of first refusal]"); *B&R Oil Co. v. Stoler*, 77 N.E.3d 823, 828-29, 831 (Ind.App.2017) (holding that an offer to purchase substantially all the property owner's assets, including the leased properties, triggered the rights of first refusal and the right-of-first-refusal provisions "imposed an affirmative duty on [the property owner] either to exclude the leased properties from the third-party offer or to allocate and attribute a portion of the purchase price to the leased premises so that each of the right-holders could exercise their rights [of first refusal]").

{¶ 30} A provision contained in a right of first refusal stating that the right must be exercised "upon the same terms and conditions" as the third-party offer requires only that the right be exercised on the same material or essential terms as the offer. *Davis v. Iofredo*, 127 Ohio App.3d 367, 370 (8th Dist.1998). The right-holder need not exactly match the terms and conditions of the third party's offer; "minor variations which obviously constitute no substantial departure should be allowed." *Id.* at 370-71; *accord Lo-Med Prescription Servs. v. Eliza Jennings Group*, 8th Dist. No. 88112, 2007-Ohio-2112, ¶ 19. Moreover, the right-holder has no obligation to meet terms and conditions added to the offer in bad faith, i.e., terms and conditions which the property owner knows are unacceptable to the right-holder, but the property owner procured from the third party for the purpose of discouraging the exercise of the right of first refusal. *Kunelius v. Stow*, 588 F.3d 1, 13 (1st Cir.2009); *Miller v. Lesea Broadcasting, Inc.*, 87 F.3d 224, 228 (7th Cir.1996); *accord W. Texas Transm., L.P. v. Enron Corp.*, 907 F.2d 1554, 1563 (5th Cir.1990) ("[T]he owner of property subject to a right of first refusal remains master of the conditions under which he will relinquish his interest, as long as those conditions are commercially reasonable, imposed in good faith, and not specifically designed to defeat the preemptive rights."); *In re New Era Resorts*, 238 B.R. 381, 386 (Bank.E.D.Tenn.1999) (recognizing an exception to the rule requiring matching of the terms of the third party's offer: "no terms may be imposed in order to defeat the right of first refusal"); *David A. Bramble, Inc. v. Thomas*, 396 Md. 443, 465 (2006) (internal quotations omitted) (holding that "the terms upon which the property owner would sell her property remains her prerogative so long as she acts in good faith").

{¶ 31} In the case at bar, the trial court found that the value of both properties was largely tied to their redevelopment potential. As William Werth testified, due to the smaller sizes of both parcels, the individual footprints of the sites made the cost of developing each site on its own prohibitive, requiring the combination of the two properties for sale and redevelopment. The trial court concluded that this logic could not be sensibly questioned. Thus, the sellers and Pizzuti each had a legitimate commercial reason to package the Annex and Char Bar properties: the sellers sought to optimize the sale price, and Pizzuti sought to purchase a site suitable for redevelopment.

{¶ 32} The trial court found the discussions between the sellers and Pizzuti regarding the joint sale of the properties "were commercially reasonable and did not unfairly target" Gordon. (Opinion at 6.) The trial court further found that the sellers and Pizzuti were transparent in their communications and about the valuations they assigned to both properties and to each individual property. In sum, the trial court disagreed that the sellers and Pizzuti "acted to defeat or frustrate [Gordon's] rights of first refusal, or [acted] otherwise in 'bad faith.' " *Id.*

{¶ 33} Gordon contests the trial court's conclusion, arguing that the evidence shows that Carlile asked Pizzuti to structure the August 3, 2020 offers to discourage Gordon from exercising its right of first refusal after Gordon objected to the single offer bundling the two properties together. In reviewing a trial court's factual findings, an appellate court weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the court clearly lost its way. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. However, when conducting its review, an appellate court "must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21. Appellate courts give deference to the trial court's factual findings because "the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).

{¶ 34} Here, the evidence shows the sellers and Pizzuti discussed how to structure the August 3, 2020 offers. There is no evidence, however, that they chose to structure the deal in order to discourage Gordon from exercising its right of first refusal. Rather, as all along, the sellers and Pizzuti structured the deal so sellers could maximize their profit, and so Pizzuti could acquire a site suitable for redevelopment. We conclude, therefore, that the trial court did not err in finding that the sellers and Pizzuti did not structure the offer for the Annex property in bad faith.

{¶ 35} In the absence of bad faith, Gordon had to match the term requiring simultaneous purchase of the Annex and Char Bar properties. A purported acceptance omitting that term did not constitute a minor variation from the proposed real estate purchase contract Pizzuti submitted for the Annex property. Accordingly, Gordon did not effectively exercise the right of first refusal to purchase the Annex property.

{¶ 36} Ultimately, we recognize the conflict inherent in our decision. An intent to accept an offer for the burdened property, even through a package deal, triggers the right of first refusal. Precedent mandates the dismantling of the package deal with the triggering of the right of first refusal so the right-holder can exercise its right of first refusal as to the burdened property. Here, however, the sellers and Pizzuti essentially reassembled the package deal with the addition of a term in the offer requiring the simultaneous purchase of the Annex and Char Bar properties. The inclusion of this term makes this case unique among cases addressing package deals, and explicitly triggers the requirement that the right-holder purchase the property "upon the same terms and conditions" as the third party's offer. The sellers and Pizzuti did not add the term requiring the purchase of both properties to the offer in bad faith. Thus, to exercise the right to first refusal contained in the Annex lease, Gordon had to meet that term. We cannot use prior case precedent to rewrite the Annex lease to delete the "same terms and conditions" requirement. *See Foster Wheeler Enviresponse v. Franklin Cty. Convention Facilities Auth.*, 78 Ohio St.3d 353, 362 (1997) (holding that a court may not rewrite the parties' contract). Accordingly, we sustain the sellers' first two assignments of error, as well as Pizzuti's assignments of error.

{¶ 37} By their third and fourth assignments of error, the sellers argue that the trial court erred in not entering declaratory judgment as requested in sellers' and Pizzuti's complaint, and in not entering judgment against Gordon on its remaining claims. Pursuant to Civ.R. 54(B), the sole judgment before this court for review is the judgment granting Gordon declaratory judgment. We decline, therefore, to review any alleged error outside of that judgment. Accordingly, we overrule the sellers' third and fourth assignments of error.

{¶ 38} For the foregoing reasons, we sustain the sellers' first and second assignments of error, as well as Pizzuti's two assignments of error, but we overrule the sellers' third and fourth assignments of error. We reverse the judgment of the Franklin County Court of Common Pleas, and we remand this cause to that court for further proceedings consistent with law and this decision.

*Judgment reversed; cause remanded.*

LUPER SCHUSTER, P.J., and SADLER, J., concur.

_____